**S.L.J., Cross–Appellant, petitioner,**

v.

**R.J., Cross–Appellant, respondent,**

v.

**Harvey KAHN, Defendant.**

**No. 53845.**

Missouri Court of Appeals,
Eastern District,
Division Three.

June 13, 1989.

Application to Transfer Denied
Nov. 14, 1989.

R.J., St. Louis, pro se.

Elaine C. Bachman, Clayton, for petitioner.

DOWD, Presiding Judge.

Husband and wife both appeal the judgment as well as certain contempt citations entered in a dissolution action. We affirm.

Husband, R.J., and wife, S.L.J., were married in September 1973. The marriage produced two children: Robbie, born in 1976, and Danny, born in 1979. In June of 1984, wife separated from husband, taking the two minor children, and filed for dissolution in December 1984. Husband also filed a petition for dissolution at a later date. The parties dispute the occurrences between separation and trial, but it is clear that they exhibited animosity toward each other. In addition, conflict developed over the custody schedule, including a line of incidents concerning Robbie's refusal to enter his mother's custody unless she accepted the family dog. At various times, both parties filed motions for temporary restraining orders and contempt. Additionally, husband filed a civil suit against wife seeking half a million dollars in damages for alienation of affection. In 1986, a guardian ad litem was appointed to represent the children. Around early 1987, psychologists employed by the St. Louis County Juvenile Court conducted court-ordered examinations of the parties and the children.

Trial began on July 7, 1987. We will not attempt to relate the extensive and often conflicting evidence offered, but note that both parties and both children testified, as did a number of psychologists, other experts, and witnesses to certain events. After the eleven day trial concluded, the court entered its findings. With respect to the children, the court found it in their best interests that wife receive custody and husband receive "extensive periods of temporary custody and visitation." Specifically, the court found that although husband loves the children, he had embroiled them in the dispute with wife, had alienated Robbie's affections for his mother and had violated the pre-trial custody order. Because of custody violations on thirty-three days and because of husband's action in preventing telephone contact between wife and the children, the court granted two of wife's motions for contempt against husband. The rest of the parties' contempt motions were either denied or declared moot.

The family home, valued at $210,000, was ordered sold, with $165,000 of the proceeds going to wife. The other marital assets were divided among the parties as discussed below. The court found that wife, who had an education degree, experience as a secretary, and was studying for a paralegal degree, was capable of earning at least $15,000 per year and did not require maintenance. Husband, an attorney, had surrendered his license to practice in Missouri in 1984 although he retained his Illinois license and a Missouri real estate bro-

ker's license. Despite husband's claim that he was unemployed and unable to earn a positive net income for at least three years, the court found him capable of earning $32,000 a year, his earnings prior to surrendering his Missouri license. Husband was denied maintenance and required to pay child support of $220 per month per child. The court also ordered him to pay $25,000 of wife's attorney's fees.

Both parties and the minor child Robbie filed various post-trial motions which were denied. Now husband appeals to this court in an eight point brief and wife appeals with a one point brief.

Wife claims that the trial court erred in denying her maintenance. Section 452.-335.1 authorizes a court to award maintenance when a party does not have sufficient property to provide for his reasonable needs and cannot "support himself through appropriate employment or is the custodian of a child whose condition ... makes it appropriate that the custodian not be required to seek employment." The trial court has great discretion in deciding whether to make such an award and its decision will not be overturned on appeal absent an abuse of discretion. *Hahn v. Hahn*, 739 S.W.2d 763, 764 (Mo.App.1987).

In the case at bar, the trial court found that wife could earn at least $15,000 per year "without detriment to the minor children" and that, combined with her property, was sufficient to meet her reasonable needs without maintenance. There was sufficient evidence to support these findings and we do not deem them to be an abuse of discretion.

Turning to husband's brief, we initially note that we are waiving his error of form. Husband requested and received permission to file a brief in excess of 100 pages, but not to exceed 120 pages. Husband in fact filed a 119 page brief, but it was not double spaced as required by Rule 81.17. Instead, the brief was one and a half spaced. Given the length of the brief, this error effectively added over 45 pages worth of extra lines. Although we overlook the error in this case, let this opinion serve as notice to the bar that any future violations of this nature will be seriously considered as grounds for dismissal.

We first address husband's second point which claims that "the trial court erred in ordering wife, a non-Jewish person, to raise the minor children within 'the traditional principles of Judaism.'" He initially argues that the court's order violated Article I section 7 of the Missouri Constitution, providing for separation of church and state. After arguing that the provision is void, husband attempts to show that custody should be awarded to him because he is a practicing Jew and wife, while born a Jew, has converted to Christianity. The implication is that husband will arrange for the children to be raised as Jews. At trial, however, wife expressed her desire that the children be raised in husband's faith as opposed to her own and claimed she was able and willing to provide such training. Both parties proposed and recommended to the trial judge that the children be raised as Jews. The trial court found that it was in the children's best interests that they be raised as Jews "until they reach the age of 16 when they may have the maturity to make their own religious decisions." He felt that failure to do so would "impair the emotional development of the children." Now that the trial court has accepted his arguments and proposals, husband claims the ruling implementing these decisions is unconstitutional.

A constitutional issue must be presented to and passed upon by the trial court or it is not preserved for appeal. *Fahy v. Dresser Industries, Inc.*, 740 S.W.2d 635, 639 (Mo. banc 1987). If not so raised, a constitutional argument is waived. *R.J.J. by Johnson v. Shineman*, 658 S.W.2d 910, 915 (Mo.App.1983). At oral argument, husband's attorney admitted that the issue here was raised for the first time in the notice of appeal and the record supports this statement. Even though husband filed post trial motions, no mention of the questioned provision was made prior to the notice of appeal. Having failed to raise this constitutional challenge before the trial court, husband waived it. Even if we examined the provision and found it uncon-

stitutional, husband would not be entitled to the relief he seeks; we would merely strike the provision from the order. Given wife's acquiescence to raising the children as Jews, such an error would not be grounds to reverse the custody award.

 Point III challenges the trial court's refusal to grant Robbie leave to intervene in post-dissolution proceedings and failure to grant a hearing on Robbie's motion for appointment of a new guardian ad litem. Patently, husband has no standing to appeal these rulings because he is not an aggrieved party. § 512.020, RSMo 1986. He attempts to draw standing from his status as Robbie's father and cites *In re Estate of McCahon*, 729 S.W.2d 67 (Mo. App.1987), in support. In that probate case, a mother was a party in her individual capacity and as guardian for her two children. When she attempted to appeal the paternity finding as to the child of decedent and another woman, the respondents claimed she was not aggrieved. The Southern District Court of Appeals held that she was entitled to appeal as guardian for the children, who were aggrieved parties, even though she could not appeal as an individual. *Id.* at 70.

*McCahon* does not apply to this case because husband is not appearing as Robbie's guardian. Under section 475.025, RSMo 1986, a parent is considered a "natural guardian" of his child "[i]n all cases not otherwise provided for by law." Section 452.490.4, RSMo 1986, allows the court to appoint a guardian ad litem for a child in custody cases. This appointment supersedes the parent's natural guardianship. *See Todd v. Garrison*, 417 F.Supp. 97, 102 (E.D.Mo.1976), aff'd 553 F.2d 103 (1977). The issue in question falls within the areas

of interest superseded by the guardian ad litem appointment; consequently husband cannot act as Robbie's guardian in these matters while the appointment lasts.[1] Because he is not appealing as Robbie's guardian, husband has no standing to raise these claims.

Husband also attacks the child support award of $220 per child per month. He claims the court failed to consider 1) the financial resources of the minor children; 2) wife's financial resources, including the property award and her employment; and 3) husband's poor financial condition. Section 452.340 sets forth the factors the trial court must consider in making a child support award; at the time of trial, prior to the 1988 amendments, the factors included the resources of the children, the resources of the custodial and non-custodial parent, and "the father's primary responsibility for support of his child." The award of support is within the trial court's discretion and will not be reversed unless clearly unsupported by the evidence. *Townsend v. Townsend*, 705 S.W.2d 595, 598 (Mo.App. 1986).

 We initially note that husband's first claim under this point, that the court failed to consider the children's resources, is patently false. The findings and conclusions specifically state that the support awarded "along with [wife's] income *and interest on funds of the children* is sufficient for petitioner to support the minor children." (emphasis added). The court obviously considered this factor and we find no error since the mere reception of interest income, even a substantial amount, does not automatically negate the need for support. *Davis v. Davis*, 693 S.W.2d 879, 883 (Mo.App.1985).

---

1. The intervention issue obviously involves the areas which the guardian was appointed to address. As to the motion to remove the guardian ad litem, husband has no authority as natural guardian either. If the court had discretion to appoint the guardian, it had the discretion to remove him as well. Section 452.423, which took effect in 1988 after the trial and also concerns appointment of a guardian ad litem in divorce cases, specifically provides the court with authority to remove a guardian who is not performing his duties. In addition, when a

child appears before a court for purposes of its own welfare, it becomes a ward of the court as to the issues in that case. *State ex rel. Catholic Charities of St. Louis v. Hoester*, 494 S.W.2d 70, 73 (Mo. banc 1973). The court's duty to serve the child's best interest, *C.J.(S.)R. v. G.D.S.*, 701 S.W.2d 165, 169 (Mo.App.1985), would make the court the appropriate "guardian" of the child's interest in having an effective guardian ad litem and thus the court's role supersedes that of the parent as natural guardian.

The remaining two claims boil down to the proposition that wife had sufficient assets to support herself while husband was in severe financial distress. Husband, however, fails to account for the fact that the trial court did not accept this factual premise. The court found that wife was capable of earning at least $15,000 a year, not a generous sum on which to raise two children, and that husband had "deliberately declined to obtain employment although he has the means and ability to be gainfully employed either as a real estate broker in Missouri or as a practicing attorney with offices in Illinois, which is within daily driving distance from the family residence." The court also held husband's present earning capacity to be equal to his earnings at the time he quit practicing in Missouri: $32,000 per year.

■ While the court must balance the children's needs against the father's ability to pay, the father cannot escape or reduce liability for support by deliberately limiting his employment so as to reduce income. *Wynn v. Wynn*, 738 S.W.2d 915, 919 (Mo. App.1987). A trial court may impute income to a parent "who has failed to use his best efforts to gain employment suitable to his capabilities." *Goodwin v. Goodwin*, 746 S.W.2d 124, 126 (Mo.App.1988). Apparently, the trial court felt husband was engaging in this tactic and there was sufficient evidence to support this conclusion. There was also evidence supporting the court's finding as to wife's income. Given the findings on these factual issues, we cannot hold the child support award to be an abuse of discretion.

Husband also claims that the trial court erred in identifying and distributing the marital property. There are five basic contentions within this point: namely, that the trial court erred in 1) identifying a depleted $145,000 payment to husband as an asset; 2) dividing the property unequally; 3) identifying certain bank accounts and the dog as marital property when they were actually the children's property; 4) designating the family home as marital property; 5) failing to consider the parties' non-marital assets when dividing the property.

■ The trial court has great discretion in determining a just division of marital property and its decision will not be disturbed on appeal unless it is so unduly favorable to one party as to amount to an abuse of discretion. *Dardick v. Dardick*, 670 S.W.2d 865, 869 (Mo. banc 1984). Similarly, the court has great discretion in identifying property as marital or separate. *Cartwright v. Cartwright*, 707 S.W.2d 469, 471 (Mo.App.1986). The party challenging the property award carries the burden of showing that it is erroneous, *Mills v. Mills*, 663 S.W.2d 369, 372 (Mo.App.1983), and the reviewing court may proceed on the assumption that the trial court considered all the evidence when dividing the martial property. *Russell v. Russell*, 740 S.W.2d 672, 674 (Mo.App.1987).

■ Husband claims that the court erred in identifying as marital property and awarding to him a bonus of approximately $145,000 which he received from his father's company. His father deposited the money into husband's bank account in December of 1986 and husband spent the money the week before the trial, ostensibly in payment of taxes and to settle a loan to his father. Citing *Busch v. Busch*, 618 S.W.2d 244 (Mo.App.1981), he argues that a depleted asset is not distributable marital property. *Busch*, involved a claim that the court erred in *not* distributing certain exhausted certificates of deposit and held that the court did not err in failing to distribute them. Where a party has intentionally secreted or squandered an asset in anticipation of divorce, however, the court may hold that party liable for the amount by awarding it to him. *Calia v. Calia*, 624 S.W.2d 870, 872 (Mo.App.1981). This effectively reduces that party's property award by the amount squandered.

The court noted that prior to July 6, 1987, husband's bank account, into which the bonus had been deposited, contained $149,166.33 and that husband withdrew and spent those funds on July 6, 1987. It then found the full amount to be marital property and distributed it to husband. Although the court did not specifically identify the amount as "squandered" funds, its

actions imply such a conclusion and there was sufficient evidence to support that conclusion. Consequently, we find no abuse of discretion regarding the bonus.

This finding essentially negates husband's claim of inequitable distribution. Disregarding this amount, he claimed that wife received approximately $208,000 in assets while he received only $27,000. A review of the divorce decree supports wife's brief, which computes husband's distribution at $176,000, including the bonus. This comes out to a division of 54% to wife and 46% to husband and hardly amounts to an abuse of discretion.

Husband also claims the court failed to consider the parties' separate assets in making the division as required by section 452.330.1, RSMo 1986. The decree indicates that the court considered all the factors in section 452.330 as it was at the time of trial, prior to the 1988 amendments, and mentions the parties' separate assets. There is no evidence that the court ignored any applicable factor and, as stated above, we do not find the division so inequitable as to require reversal.

█ Regarding the home, husband claims the evidence does not support the finding that it was a marital asset.[2] The trial court specifically found that the home was purchased for the joint benefit of the parties, that both parties contributed funds to its purchase and that these contributions were intended to be contributions to the marital estate. The court specifically rejected all opposing evidence as incredible. Although husband provided a majority of the funds to purchase the home and testified that he did not intend to create marital property, the court was free to disbelieve him and to find that he intended to donate his assets to create marital property. *Kramer v. Kramer*, 709 S.W.2d 157, 159 (Mo.App.1986). We find no abuse of discretion in this finding.

█ Finally, husband claims the trial court erred in designating as marital prop-

erty the family dog and certain bank accounts. The accounts were held by the parties in custody for the children and the dog had been purchased as a gift for Robbie. Regarding the bank accounts, husband has not pointed us to any evidence that these accounts were established as custodial accounts under the requirements of the Uniform Gift to Minors Act, § 404.047 RSMo 1986. Thus, it was not error for the court to distribute them as marital property. *Hanson v. Hanson*, 738 S.W.2d 429, 438–39 (Mo. banc 1987). As for the dog, if husband's contentions of error are true, Robbie would be the only aggrieved party and therefore husband has no standing to raise this contention as explained above.

█ Husband also challenges the court's orders finding him in contempt on the grounds stated in two of wife's motions and the failure to find wife in contempt for removing the children from school on a day when husband had custody. He claims that any violations of the PDL custody order on his part were caused by the children's refusal to see or speak with their mother and especially by Robbie's insistence that he would not go to his mother's home unless she accepted the family dog as well. A trial court may impose an order of contempt on a parent for violation of a child custody and visitation decree if the court finds the parent's disobedience was willful and intentional. *Dow v. Dow*, 728 S.W.2d 714, 717 (Mo.App.1987). Upon review, we will only disturb the trial court's decision if it is a clear abuse of discretion. *In re Marriage of P.K.A.*, 725 S.W.2d 78, 79 (Mo.App.1987).

█ In the case at bar, the court found that husband willfully and intentionally violated the court order by assuming custody of the children on thirty-three stated days when wife had custody and by refusing wife telefonic access to the children. The court also found that although wife did remove the children from school

---

**2.** The home was not titled in the parties' names. To protect his privacy, husband had the home titled to defendant Harvey Kahn. Although Mr. Kahn had filed a quit claim deed to husband and wife at the time of trial, the deed identified the wrong parcel of property. The court held that the home was marital property although still titled in Mr. Kahn's name.

on a day when husband had custody, this action was an isolated event and was not a willful violation or contumacious of the court's order. There was evidence to support these findings in addition to the contrary evidence related in husband's brief. The court was free to believe or disbelieve any of the testimony and apparently chose to disbelieve the evidence related in husband's brief. *Herbert v. Harl*, 757 S.W.2d 585, 587 (Mo. banc 1988). We find no abuse of discretion.

Husband cites cases holding that a parent should not be cited for contempt where the child refuses to comply with the custody order. *A.G. v. R.M.D.*, 730 S.W.2d 543 (Mo. banc 1987); *Morovitz v. Morovitz*, 743 S.W.2d 893 (Mo.App.1988); *Bopp v. Bopp*, 671 S.W.2d 348 (Mo.App.1984); *Shanks v. Shanks*, 603 S.W.2d 46 (Mo.App.1980). While we recognize this line of cases, they do not require us to reverse the trial court's decision here. First, the cited cases involved children who were older than Robbie and Danny. Second, the court found that not only did husband fail to encourage Robbie to go with wife, but in fact supported Robbie's use of the dog to manipulate his mother and used the situation to "poison" Robbie's mind against wife. Under the facts the court chose to believe, this was not a situation where husband was unable to override the children's wishes; it was a situation where husband actively used the children's reluctance to his advantage. Courts strongly condemn a parent's conduct which seeks to "instill disrespect or destroy affection of the children for the other parent." *In Re Marriage of J.H.M.*, 544 S.W.2d 582, 586 (Mo.App.1976).

In his seventh point, husband challenges the trial court's order that he pay $25,000 of wife's attorney's fees. Husband admits that the court had great discretion in making such an award. *Harris v. Harris*, 685 S.W.2d 242, 244–45 (Mo.App.1985). He claims, however, that the award was an abuse of discretion because he cannot afford to pay the award and wife does not need the financial assistance. We have already discussed husband's claims as to his and wife's relative financial positions and will not do so again. We merely hold that there was evidence to support the award and we find no abuse of discretion.

Husband finally attacks the trial court's actions in setting the form and amount of his supersedeas bond. He claims the trial court improperly valued certain items and improperly included others, thus reaching an excessive total. He also claims the court erred in holding that the custody order would remain in effect pending appeal. These contentions have already been presented to this court in the form of a motion which was denied on January 5, 1988. The Missouri Supreme Court subsequently denied husband's petition for a writ based on this decision. The issues have already been decided; we decline to address them again.

During oral argument, husband abandoned his first point on appeal, which challenged the custody award. Both parties, however, pointed out that the portion of the custody award setting custody on alternate weeks from "6:00 p.m. Friday until 6:00 p.m. on the following Friday" would interfere with the Jewish religious observances and both felt a transfer date of Monday would be more appropriate. Given this agreement, we will amend the judgment to read that husband's weekly temporary custody shall run "for the weekly period from 8:00 a.m. on Monday until 8:00 a.m. on the following Monday."

The decree of the trial court is affirmed as amended.

SIMON and HAMILTON, JJ., concur.