**STATE of Missouri ex rel. John R. BIRD, Relator,**

v.

**Honorable Kenneth WEINSTOCK, Respondent.**

No. 63638.

Missouri Court of Appeals, Eastern District, Division Three.

Oct. 5, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 10, 1993.

---

Anthony Raymond Behr, Kelly C. Kuehnlein, St. Louis, for relator.

James M. Martin, David L. Campbell, St. Louis, for respondent.

CRAHAN, Presiding Judge.

Relator, John R. Bird ("Guardian"), guardian ad litem for two minor children in a separate pending child custody proceeding involving allegations of child sexual abuse, seeks a writ of prohibition against Respondent, the Honorable Kenneth Weinstock, commanding him to dismiss an action filed against Guardian by the minor children's father ("Father"), individually and in his alleged capacity as the children's parent and natural guardian, alleging legal malpractice by Guardian in his representation of the children in the custody suit. Guardian maintains that he is entitled to judicial immunity with respect to his actions as court appointed guardian for the minor children in the custody action and that Respondent is therefore acting in excess of his jurisdiction in refusing to dismiss the legal malpractice claims against him for failure to state a claim for which relief can be granted. Guardian's claim of immunity presents an issue of first impression in Missouri. We hold that Guardian is entitled to immunity for his discretionary actions as court appointed guardian ad litem which are alleged as the basis

for relief and therefore order that our preliminary writ heretofore issued be made permanent.

## Factual Background

The marriage of Father and the minor children's mother ("Mother") was dissolved by order of the Circuit Court of Madison County, Illinois in October, 1986. Custody of the couple's two sons born in 1982 and 1983 was awarded to Mother and Father was awarded rights of temporary custody and visitation. In May, 1987 the Illinois decree was registered in the Circuit Court of the City of St. Louis and Mother moved to modify the decree, although the specific relief sought is not disclosed by the record before us. Father and Mother subsequently filed cross motions for contempt. The court found Mother in contempt, apparently for depriving Father of his right to visitation, and found Father innocent of contempt with respect to payment of child support.

In July, 1987, Father filed a motion for temporary modification of custody, alleging sexual abuse of both boys by Mother's new husband ("Stepfather") while in Mother's presence. In response to such allegations, the court entered an order transferring temporary custody to Father and ordered that the children be evaluated at Cardinal Glennon Children's Hospital. The following day, the court amended its order and granted full custody to Father pending a hearing and directed appointment of a guardian ad litem for the children. Rita Montgomery was subsequently appointed as guardian ad litem on the court's own motion. In August, 1987, the parties and the children were ordered to submit to psychological evaluation.

In September, 1987, pursuant to a motion filed by a deputy juvenile officer, the court modified its custody order and transferred custody of the children to Mother's sister and brother-in-law, with directions that Mother's visits with the children be supervised by the Juvenile Court. In February, 1988, the court ordered custody transferred to the Division of Family Services ("DFS") so that the children could be placed in foster care. In

August, 1988, the custody arrangements were further modified to permit visitation by either parent under the supervision of a deputy juvenile officer or an agent of DFS.

In February, 1989, after a lengthy hearing, the court entered an order awarding permanent custody of the children to Father, based on its determination that Stepfather had, in fact, sexually abused the children and that Mother was aware of such abuse and sought to conceal it. Mother was granted three hours supervised visitation per week. The court further ordered that Stepfather was not to be in the presence of the children or to have any contact with them whatsoever. Ms. Montgomery was discharged as guardian ad litem.

Thereafter, in May, 1989, based upon allegations that there had been contact between Stepfather and the children and that Stepfather had threatened them with bodily harm, the court modified its previous custody order to provide that Mother was to have no further contact with the children. The court further ordered that the cause be transferred to the Juvenile Division of the court.[1]

In February, 1990, Relator John R. Bird was appointed guardian ad litem for the children by the Juvenile Court. Father moved for termination of Mother's parental rights and Mother moved for modification of custody. Father's motion was overruled. Father also requested that the Juvenile Court refer the matter to the Circuit Attorney's office for prosecution. This request was denied, the court noting that any party had the right to pursue such matters directly with the Circuit Attorney. The court also granted Mother's request for a home study by a deputy juvenile officer.

Thereafter, during 1991 and 1992, the parties engaged in a series of legal skirmishes, including multiple unsuccessful attempts by Father to obtain extraordinary relief from this court and the Missouri Supreme Court. Such disputes principally involved Father's attempts to force the Juvenile Court judge to disqualify herself, motions to hold Father in contempt for interfering with court-ordered

---

1. Prior to this ruling, all proceedings were held in the Domestic Relations Division. Since May, 1989, all proceedings have been conducted in the Juvenile Division.

evaluation of the children involving supervised interaction with Mother, and, after the filing of the subject suit, the Juvenile Court's disqualification of Father's counsel, David L. Campbell (who filed the underlying suit allegedly on behalf of the children), from any further representation of Father in the Juvenile Court proceedings. Meanwhile, the Circuit Attorney's office brought criminal charges against Stepfather alleging sodomy upon the children. The first trial resulted in a hung jury and the second resulted in an acquittal.

Beginning in March 1992, the Juvenile Court ordered further supervised visitation by Mother. Although the date is not disclosed by the record before us, we were advised at oral argument that the Juvenile Court has subsequently transferred custody of the children to DFS.

### The Underlying Suit

In October, 1992, Father filed the underlying lawsuit in the Circuit Court of St. Louis County. The caption of the petition indicates that the action is being brought by Father "individually and as parent and natural guardian" of the named minor children. The named defendants are Mother, Stepfather and Relator, John R. Bird. After alleging much of the foregoing history and describing the alleged acts of sexual abuse upon the minor children in graphic detail, Count I seeks to enjoin Mother and Stepfather from any further contact with the children and Count II seeks actual and punitive damages against Mother and Stepfather for assault and battery. Count III seeks actual and punitive damages against Guardian for "Professional Negligence." Count IV incorporates the prior factual allegations and seeks actual and punitive damages against all defendants on a theory of "Outrageous Conduct."

As to the claims against Guardian, Count III first incorporates the factual allegations concerning sexual abuse and prior court orders relating thereto, all of which, so far as is disclosed by the petition or the record before us, transpired prior to Relator's appointment as Guardian. The petition then alleges: (1) that Guardian is an attorney at law appointed to represent the interests of the minor children in connection with proceedings concerning custody and rights of visitation of their Mother; (2) that Guardian has had no contact with the children, has never talked with them, and refuses to talk with their Father or to conduct any independent investigation to verify their reports of sexual abuse by Stepfather; (3) that Guardian has been repeatedly advised of the children's consistent statements to various named authorities about sexual abuse by Stepfather; and (4) that Guardian has been repeatedly advised by medical authorities who have examined and treated the children that it is injurious to their health to have any contact with Mother or Stepfather. The petition then alleges:

Defendant BIRD has been professionally negligent in his representation of the plaintiffs and has failed to exercise the highest degree of care to represent and protect the interests of the plaintiffs before the Juvenile Division of the St. Louis County Circuit Court in the Custody Proceedings in that he knew and reasonably should have known of the matters set forth in paragraphs 5 through 19, inclusive of Count I hereof, and the fact that plaintiffs are suffering from mental and emotional illness and disturbance in the nature of Post Traumatic Stress disorder associated with the aforesaid physical, emotional and sexual abuse; that, in spite of knowledge of those matters set forth in paragraphs 4 and 5 above, defendant has knowingly and willingly caused, allowed and permitted defendant [Mother] to obtain supervised visitation with plaintiffs, has failed to protest or appeal, or to otherwise represent plaintiffs before the trial or appellate courts with respect to orders entered in favor of defendant [Mother] at the expense of plaintiffs and without notice or hearing or an opportunity for plaintiffs or their father to be heard with respect thereto; by causing, allowing and permitting interactive interviews between plaintiffs and [defendants] to occur; by subverting and undermining the criminal prosecutions of defendant [Stepfather]; by aiding and assisting defendant [Stepfather] in defending sodomy charges brought against him arising out of the aforesaid sexual abuse of plain-

tiffs; and by abandoning his representation of the interests of the plaintiffs in the Custody Proceedings in favor of aiding, abetting and assisting [Mother and Stepfather] in the furtherance of their interests, and by advocating the same; and by abandoning plaintiffs and assuring that they had no effective legal representation in the Custody Proceedings and no access to legal counsel.

Count III then alleges that such negligence by Guardian has aggravated the children's emotional disturbance and caused them to incur medical and legal expenses resulting in damages in excess of $1,000,000.00. Further, the petition alleges that Guardian's actions were willful and malicious, thereby justifying an award of punitive damages.

### Standing

Before turning to the merits of Guardian's claim of immunity, we are obliged to consider the issue of Father's standing to maintain the underlying action. This issue was raised indirectly in Guardian's motion to dismiss but was not briefed by either party or expressly raised as a basis for issuance of the writ. Nevertheless, because our jurisdiction is derivative, we are obliged to examine *sua sponte* the issue of whether the trial court has jurisdiction. *State ex rel. Webster v. San Juan Products,* 728 S.W.2d 735 (Mo. App.1987). If a party lacks standing sufficient to maintain the action and therefore has no right to relief, the trial court necessarily lacks jurisdiction of the question presented and cannot enter a judgment on the matter. *Western Casualty & Surety Co. v. Kansas City Bank & Trust Co.,* 743 S.W.2d 578, 580 (Mo.App.1988).

Inquiry into Father's standing to bring the underlying action is prompted by the fact that Father purports to bring the action individually *and* in his alleged capacity as parent and "natural guardian" of the children. At the same time, however, the petition recites that Mr. Bird is the duly appointed guardian ad litem for the children pursuant to appointment by the Juvenile Court of the City of St. Louis. From what is disclosed by the record, Mr. Bird's status as guardian as litem

existed at the time of filing and continues to this day.

In *S.L.J. v. R.J.,* 778 S.W.2d 239 (Mo.App.1989), we held that appointment of a guardian ad litem in custody cases supersedes a parent's natural guardianship, at least within the areas of interest in the custody proceeding, so long as the appointment lasts. *Id.* at 243. Under § 475.025 RSMo. 1986, a parent is considered a "natural guardian" of his child "in all cases not otherwise provided for by law." Where a statute allows appointment of a guardian ad litem for a child, such appointment deprives the parent of standing to assert claims relating to the areas of interest for which the guardian is appointed. *Id.* Further, when a child appears before a court for purposes of its own welfare, the child becomes a ward of the court as to issues in that case. *Id.* at n. 1.

The issue presented in *S.L.J. v. R.J.* was whether the father had standing to challenge on appeal the trial court's refusal to remove a guardian ad litem, either individually or in his capacity as parent and alleged "natural guardian" of the children. We held that father had no standing individually because he was not an "aggrieved party" and no standing as "natural guardian" because such status had been superseded by the court's appointment of a guardian ad litem pursuant to § 452.490.4 RSMo. 1986.

Unlike the situation presented in *S.L.J. v. R.J.,* the underlying suit is an independent tort action brought by Father on behalf of the children seeking to obtain injunctive relief and money damages. Nevertheless, the factual allegations of the petition and the nature of the relief sought would appear to fall squarely within the areas of interest in the Juvenile Court proceeding in which Guardian was appointed. For example, issuance of injunctive relief against Mother's contact with the children would, on its face, be incompatible with the Juvenile Court's jurisdiction over custody issues. The issue of whether and under what circumstances Mother is to have visitation appears to be the precise issue for which Guardian was appointed to represent the best interests of the children. Further, although Father does not expressly seek Mr. Bird's removal

as guardian ad litem as part of the relief requested in the underlying suit, the mere assertion of a claim for money damages against him by his clients could very well accomplish the same result by posing an inherent conflict of interest.[2] Removal of a guardian ad litem, however, is a matter vested in the sound discretion of the appointing court, in this case the Juvenile Court for the City of St. Louis. *See* §§ 210.160.3, 452.423.3 RSMo.Supp.1992; *S.L.J. v. R.J.*, 778 S.W.2d at 243 n. 1. Moreover, to approve of Father's standing would raise issues well beyond the scope of the narrow issue raised in this proceeding. If Father has standing, why not Mother? Would suits and counter-suits brought in the name of the children become the new weapon of choice in the arsenal of estranged couples? Thus, at least with respect to the claims asserted against Mother and Guardian, there is substantial reason to question Father's standing to maintain the underlying suit.

Despite these concerns we have concluded that it would be inappropriate to resolve this case on the issue of standing. This is an original proceeding for an extraordinary writ, not an appeal. Mother and Stepfather are not parties. The record before us is extremely limited and does not include the extensive record made in the ongoing proceeding before the Juvenile Court of the City of St. Louis. There are references in the docket sheets from that proceeding to an order appointing Father as next friend for purposes of this suit, although it is not clear from the record whether the order was ever entered or, if so, whether it is an order of the Juvenile Court or, more likely, an order of the Circuit Court of St. Louis County.[3] Neither the issue of standing nor the effect of this alleged order has been briefed by the parties. A determination that Father lacks standing as natural guardian of the children would not completely dispose of the issue of Guardian's claimed immunity because Father also purports to sue in his individual capacity. Father has vigorously opposed issuance of the writ, thus dispelling any possible concern that we might be deprived of the zealous advocacy the doctrine of standing is intended to ensure.

For all of these reasons, we decline to resolve in this case the issue of Father's standing to bring the underlying suit on behalf of the children. We emphasize, however, that nothing in this opinion should be taken as in any way determining that such standing exists. Rather, we reserve judgment on the question in light of the limited record available to us in a writ proceeding. The trial court is in a far better position to develop on remand an appropriate record upon which to resolve the issue of standing in the context of the issues and parties before it. Because the questions raised are jurisdictional, it is obliged to do so *sua sponte* if necessary.

### Guardian Ad Litem Immunity

■ The claims against Guardian are based on allegations of negligence in the performance of his duties as a court appointed guardian ad litem in a child custody proceeding involving allegations of child sexual abuse.[4] Guardian maintains that he is enti-

2. Indeed, we were advised at oral argument that Guardian has essentially suspended his representation of the children in the Juvenile Court proceeding and has advised that court of the necessity of withdrawal due to the conflict presented. We were further informed that the Juvenile Court has not ordered such withdrawal because, not surprisingly under the circumstances, it has been unable to find anyone willing to serve.

3. At oral argument, counsel indicated that such an order was entered by the Circuit Court of St. Louis County. The jurisdiction of that court to enter such an order while the custody proceeding is pending in the City of St. Louis is questionable in light of the foregoing but is not before us in this proceeding and we express no opinion thereon.

4. Father's reliance on *Spotts v. Spotts*, 331 Mo. 917, 55 S.W.2d 977 (1932) and cases from other jurisdictions concerning the liability of a guardian or next friend for costs or monetary damages when representing a minor's *property interests* is misplaced. In such situations there is usually provision for the filing of a bond and the role of the guardian or next friend and the guardian's relationship to the court are distinguishable from the guardian's role and responsibilities in a custody suit. *See, e.g.,* Rule 52.02. For an excellent discussion of the various roles of guardians ad litem, *see Collins on behalf of Collins v. Tabet*, 111 N.M. 391, 806 P.2d 40 (1991).

tled to absolute immunity for conduct within the scope of his duties based on his status as a quasi-judicial officer serving as an arm of the court in child custody matters. Guardian urges that to hold otherwise would undermine the independence guardians ad litem are expected to exercise in the best interests of the children and would deter qualified persons from accepting such appointments in situations where involvement of a guardian is mandated by statute. Further, Guardian maintains that recognition of a negligence cause of action against statutorily mandated guardians ad litem would be incompatible with the statutory scheme provided by the legislature.

In support of his claim of what can properly be termed "quasi-judicial" immunity, Guardian points out that the Missouri Supreme Court has adopted the common law doctrine of judicial immunity, explaining the rationale as follows:

> Judicial immunity exists "not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, [in] whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences."

*State ex rel. Raack v. Kohn,* 720 S.W.2d 941, 944 (Mo. banc 1986) (citing *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967)).

Missouri courts apparently have not had occasion to consider whether the common law doctrine of judicial immunity may be invoked by individuals who are not judges. However, the United States Supreme Court has repeatedly recognized that it is not the judicial office but the judicial *function* that requires protection. *See Westfall v. Erwin,* 484 U.S. 292, 296 n. 3, 108 S.Ct. 580, 583 n. 3, 98 L.Ed.2d 619 (1988) ("[T]his Court, has long favored a 'functional' inquiry—immunity attaches to particular official functions, not to particular offices."); *Forrester v. White,* 484 U.S. 219, 224, 108 S.Ct. 538, 542, 98 L.Ed.2d 555 (1988); *Harlow v. Fitzgerald,* 457 U.S. 800, 810–11, 102 S.Ct. 2727, 2734, 73 L.Ed.2d 396 (1982). Thus, based on the same rationale endorsed by the Missouri Supreme Court in *State ex rel. Raack v. Kohn, supra,*

the United States Supreme Court has not hesitated to extend absolute immunity to various individuals whose adjudicatory functions or other involvement with the judicial process have been deemed to warrant protection from harassment, intimidation or other interference with impartial decision making. *See, e.g., Briscoe v. LaHue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983) (witnesses in judicial proceedings); *Butz v. Economou,* 438 U.S. 478, 512–14, 98 S.Ct. 2894, 2913–15, 57 L.Ed.2d 895 (1978) (federal administrative law judge); *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (state prosecuting attorney).

Employing this same functional analysis, a number of federal and state courts have held various participants in judicial proceedings, including guardians ad litem, absolutely immune from liability for the actions undertaken in performance of their roles as integral parts of the judicial process. *See Tindell v. Rogosheske,* 428 N.W.2d 386 (Minn.1988) (guardian ad litem in paternity and child support action); *Kurzawa v. Mueller,* 732 F.2d 1456, 1458 (6th Cir.1984) (guardian ad litem in proceeding to terminate parental rights); *Cok v. Cosentino,* 876 F.2d 1 (1st Cir.1989) (guardian ad litem in custody dispute); *Myers v. Morris,* 810 F.2d 1437, 1465–67 (8th Cir.1987) (guardians ad litem in investigation of child sexual abuse); *Penn v. McMonagle,* 60 Ohio App.3d 149, 573 N.E.2d 1234, 1237 (1990) (guardian ad litem in child custody dispute); *see also Collins on behalf of Collins v. Tabet,* 111 N.M. 391, 806 P.2d 40, 45–46 (1991) (collecting cases extending immunity to a variety of quasi-judicial functions, including guardians ad litem).

Guardian relies principally on *Tindell v. Rogosheske, supra.* There, as here, a disgruntled parent brought an action in her capacity as parent and natural guardian of her child against a court appointed guardian ad litem alleging negligence in the performance of his duties in a paternity and child support action. The guardian ad litem had been appointed pursuant to statute to protect the best interest of the child. Noting that judges and other quasi-judicial officers have been protected by judicial immunity, the Minnesota Supreme Court held that the ra-

tionale underlying the doctrine of judicial immunity mandated the extension of absolute immunity to guardians ad litem for acts undertaken within the scope of their statutory duties. *Tindell*, 428 N.W.2d at 387. The court reasoned:

> The guardian's duty is to act within the course of [the] judicial proceeding in furtherance of the best interests of the child for whom the guardian has been appointed. A guardian must be free, in furtherance of the goal for which the appointment was made, to engage in a vigorous and autonomous representation of the child. Immunity is necessary to avoid harassment from disgruntled parents who may take issue with any or all of the guardian's actions.

*Id.* (citations omitted).

Father disputes both the holding of *Tindell* and its applicability to Missouri. Characterizing *Tindell* as erroneously predicating immunity on the guardian ad litem's status as an "officer of the court," Father points out that the United States Supreme Court has expressly rejected the notion that the bare fact that an attorney is considered an "officer of the court" in certain contexts thereby entitles an attorney to claim quasi-judicial immunity, at least from malpractice liability to his own client. *Ferri v. Ackerman*, 444 U.S. 193, 204, 100 S.Ct. 402, 409, 62 L.Ed.2d 355 (1979). In addition, Father urges that, in contrast to Minnesota, Missouri statutes establish that Guardian is merely a court appointed attorney for the children, not a judicial officer, and is thereby subject to the same malpractice liability to his clients as may be imposed on any other attorney.[5] None of these contentions can withstand scrutiny.

Although the Minnesota Supreme Court in *Tindell* did quite properly characterize the guardian ad litem as an "officer of the court," it is abundantly clear from the passage set forth above that the court's holding is not based on such characterization alone. Rather, the court engaged in precisely the sort of *functional* analysis repeatedly endorsed by the United States Supreme Court. *See Westfall v. Erwin, supra; Forrester v. White, supra; Harlow v. Fitzgerald, supra.* The touchstones of the immunity recognized in *Tindell* were the guardian's statutory responsibility to protect the "best interests of the child," the independence and autonomy essential to such responsibilities, and the court's recognition that the independence and autonomy expected of the guardian ad litem would inherently be compromised in the absence of immunity. 428 N.W.2d at 387.

Father's reliance on *Ferri v. Ackerman, supra,* is misplaced. In *Ferri,* the United States Supreme Court addressed the narrow question of whether, as a matter of *federal* statutory or common law,[6] a court appointed defense counsel in a federal criminal proceeding is entitled to assert quasi-judicial immunity as a defense to a malpractice claim asserted under state law. Answering this question in the negative, the Court contrasted the responsibility of judicial and quasi-judicial officials to whom immunity has been extended with those of a court appointed defense counsel. Typically, those to whom immunity has been extended represent the interests of society as a whole. The conduct of their official duties may adversely affect a wide variety of individuals, each of whom may be a potential source of future controversy. *Ferri,* 444 U.S. at 202, 204, 100 S.Ct. at 408, 409. Immunity has thus been extended to forestall an atmosphere of intimidation that would conflict with their resolve to perform their functions in a principled fashion. *Id.* Appointed counsel's principal responsibility is to serve the individual interests of his client. In fact, an indispensable element of his performance is the ability to act independently of the state and to oppose it in adversary litigation. *Id.* In essence, al-

---

5. Father also attempts to distinguish *Tindell* on the ground that the plaintiff in *Tindell* was the parent, whereas Father maintains in this case the plaintiffs are the child "clients." Father is incorrect. In *Tindell*, as here, the parent brought her action in her alleged capacity as "natural guardian of her minor child." *Tindell*, 428 N.W.2d at 386.

6. The Court expressly acknowledged the right of a state to provide for immunity as a matter of state law and was concerned solely with the issue of whether immunity was mandated by federal law under the circumstances presented. *Ferri,* 444 U.S. at 198, 100 S.Ct. at 406.

though the Court acknowledged that there might be other policy bases for extended immunity to appointed counsel, such an extension could not be justified strictly on the basis of function because defense counsel and the court are not on the same side.

In contrast, at least in custody matters, the guardian ad litem has traditionally been viewed as functioning as an agent or arm of the court, to which it owes its principal duty of allegiance, and not strictly as legal counsel to a child client. *See Leary v. Leary*, 97 Md.App. 26, 627 A.2d 30 (1993); *Ward v. San Diego County Dept. of Social Services*, 691 F.Supp. 238 (S.D.Cal.1988); Elrod, *Counsel for the Child in Custody Disputes: The Time is Now*, 26 Fam.L.Q. 53, 59–62 (1992). In essence, the guardian ad litem role fills a void inherent in the procedures required for the adjudication of custody disputes. Absent the assistance of a guardian ad litem, the trial court, charged with rendering a decision in the "best interests of the child," has no practical or effective means to assure itself that all of the requisite information bearing on the question will be brought before it untainted by the parochial interests of the parents. Unhampered by the *ex parte* and other restrictions that prevent the court from conducting its own investigation of the facts, the guardian ad litem essentially functions as the court's investigative agent, charged with the same ultimate standard that must ultimately govern the court's decision—*i.e.*, the "best interests of the child." Although the child's preferences may, and often should, be considered by the guardian ad litem in performing this traditional role, such preferences are but one fact to be investigated and are not considered binding on the guardian.

*Id.* Thus, the obligations of a guardian ad litem necessarily impose a higher degree of objectivity on a guardian ad litem than is imposed on an attorney for an adult. *Short By Oosterhous v. Short*, 730 F.Supp. 1037, 1038 (D.Colo.1990) (citing *In re Marriage of Barnthouse*, 765 P.2d 610, 612 (Colo.App. 1988), *cert. denied* 490 U.S. 1021, 109 S.Ct. 1747, 104 L.Ed.2d 184 (1989)).

This traditional role of the guardian ad litem may properly be contrasted with the view that the role of the guardian is to act solely as attorney or legal counsel to the child. *See* Note, *Lawyering for the Child: Principles of Representation in Custody and Visitation Disputes Arising From Divorce*, 87 Yale L.J. 1126, 1141 (1978). This view contemplates a strict attorney-client relationship with the child wherein the guardian is expected to act strictly as an advocate for the child's preferences. *Id.; see also Leary v. Leary, supra.* This is essentially the view espoused by Father. He asserts that § 452.-423 RSMo Supp.1992[7] codifies the guardian ad litem's status as that of a court appointed attorney for the child which, he asserts, is incompatible with Guardian's claimed status as a judicial officer.

Sections 452.423.2(1) and (2) RSMo Supp. 1992 provide:

2. The guardian ad litem shall:

(1) Be the legal representative of the child at the hearing, and may examine, cross-examine, subpoena witnesses and offer testimony;

(2) Prior to the hearing, conduct all necessary interviews with persons having contact with or knowledge of the child in

---

7. It is not clear from the record before us whether Guardian was appointed pursuant to this provision. As indicated in our recitation of the factual background, Guardian was appointed by the Juvenile Division, not by the Domestic Relations Division of the Circuit Court, which transferred the case to the Juvenile Division for a determination of custody issues after receiving allegations of further contact between Stepfather and the child. Such transfers are expressly authorized by § 211.051 RSMo 1986. The order appointing Guardian makes no mention of the specific statutory authority for the appointment. However, § 210.160 RSMo Supp.1992 also mandates appointment of a guardian ad litem in cases involving abuse and neglect, including

cases arising under §§ 452.375 to 452.410. Although § 210.160 contains many of the same provisions as § 452.423, it is not identical and, for reasons which are not immediately apparent, omits the language set forth above with respect to the duties of the guardian ad litem and instead contains a provision authorizing the guardian to obtain certain reports and information. *See* § 210.160.2 RSMo.Supp.1992. Neither party has addressed the difference in statutory language and we do not discern any reason why the differences would be material in the context of the question presented. Therefore, for purposes of our analysis we will assume that both §§ 452.-423 and 210.160 are applicable.

order to ascertain the child's wishes, feelings, attachments and attitudes. If appropriate, the child should be interviewed.

Contrary to Father's contention, our review of these provisions, the balance of § 452.423 and § 210.160, and Missouri case law concerning the contemplated role of a guardian ad litem in child custody actions leads us to conclude that the role envisioned for the guardian ad litem in Missouri is a hybrid of the traditional and attorney-client roles, although closer to the traditional role than the strict attorney-client or advocate role.

Viewed in isolation, the use of the term "legal representative," the authorization to subpoena and examine witnesses and offer testimony, and the requirement that the guardian ascertain the child's wishes, feelings, attachments and attitudes could be viewed as indicative of a legislative intent that the guardian ad litem is to function as attorney for the child. On the other hand, none of these features of the statute are inherently inconsistent or incompatible with the traditional view of the guardian ad litem's role. The term "legal representative" is ambiguous. A "representative" may be one acting "in place of" as well as "on behalf of." Although the trial activities of subpoenaing and examining witnesses and offering testimony must ordinarily be performed by an attorney, there is no express requirement that the guardian perform these activities personally. In fact, both §§ 452.423.5 and 210.160.5 allow the court to designate non-attorney volunteer advocates to assist in the performance of the guardian ad litem duties *"for the court,"* (emphasis added) with access to a court appointed attorney guardian ad litem if the circumstances require. Although the guardian ad litem is required to ascertain the child's wishes, feelings, attachments and attitudes, there is no direction that the guardian advocate such wishes and feelings even if the guardian concludes that the child's desires are not in its best interest. *See* § 452.423.2(2) RSMo Supp.1992.

 Missouri courts have consistently held that the duty of a guardian ad litem is to protect the best interests of the child. *In re*

*G,* 389 S.W.2d 63, 66 (Mo.App.1965). It is the guardian ad litem's duty to stand in the shoes of the child and to weigh the factors as the child would weigh them if his judgment were mature and he was not of tender years. *In Interest of J.L.H.,* 647 S.W.2d 852 (Mo. App.1983). The court is not bound by the opinion or recommendation of the guardian ad litem. *Brooks v. Division of Children's Services,* 411 S.W.2d 276, 282 (Mo.App.1967). Nevertheless, under our statutory scheme for adjudication of custody disputes, it is imperative that the guardian ad litem investigate and present its perspective to the trial judge, thereby enabling the court to render a decision in accordance with the statutory standard of "best interests of the child." *In Interest of J.L.H.,* 647 S.W.2d at 860–61; §§ 452.375.2, 452.410.1, RSMo Supp.1992. Our review of these and other cases addressing the role of the guardian ad litem in custody disputes confirms that Missouri courts have consistently adhered to the traditional view that the guardian's principal allegiance is to the court. Although the best interests of the child are always paramount, the guardian's relationship to the child is not strictly that of attorney and client.

We find nothing in the statutory language cited by Father to indicate that the legislature intended to change or redefine the traditional role of the guardian ad litem in custody matters. To the contrary, §§ 452.423.3 and 210.160.3 expressly mandate that the trial judge monitor the guardian ad litem's performance of his duties and discharge him if he fails to perform them diligently. *See S.L.J. v. R.J., supra,* 778 S.W.2d at 243. In a typical attorney client relationship, the client, not the court, determines whether the attorney's performance is satisfactory and has the absolute right to discharge him for any reason or no reason. Thus, §§ 452.423.3 and 210.160.3 are incompatible with Father's view of the guardian's role and support our determination that the guardian functions in a quasi-judicial capacity as an agent of the court.

We hold that the same policies that led the Missouri Supreme Court to recognize judicial immunity in *State ex rel. Raack v. Kohn* compel the extension of quasi-judicial immu-

nity to statutorily mandated guardians ad litem in child custody proceedings. As other courts have observed:

Indeed, the need for an independent guardian ad litem is particularly compelling in custody disputes. Often, parents are pitted against one another in an intensely personal and militant clash. Innocent children may be pawns in the conflict. To safeguard the best interests of the children, however, the guardian's judgment must remain impartial, unaltered by the intimidating wrath and litigious penchant of disgruntled parents. Fear of liability to one of the parents can warp judgment that is crucial to vigilant loyalty for what is best for the child; the guardian's focus must not be diverted to appeasement of antagonistic parents. *See Ward v. San Diego County Dep't of Social Serv.*, 691 F.Supp. 238, 240 (S.D.Cal.1988).

*Short by Oosterhous v. Short, supra,* 730 F.Supp. at 1039. Further, in Missouri, permitting suits against guardians ad litem would be incompatible with the court's exclusive power of removal. The filing of the suit, irrespective of the merits of the contentions advanced, would instantly create a conflict of interest between the guardian and the child, thus necessitating withdrawal or, as occurred in this case, suspension of the guardian's participation.[8] Thus, assuming standing exists, either parent or the child could accomplish indirectly what we have previously held they cannot accomplish directly—*i.e.,* removal of a guardian whose views of the child's best interests do not coincide with their own. *S.L.J. v. R.J., supra,* 778 S.W.2d at 243. Only a grant of immunity will preserve to the trial court the exclusive responsibility and authority to supervise and remove guardians ad litem contemplated by §§ 452.423.3 and 210.160.3.

██ Extension of judicial immunity to guardians ad litem in custody matters does not, as Father contends, thereby remove all accountability. There are numerous mecha-

nisms in place to prevent abuse and misconduct. Attorney guardians remain subject to the Rules of Professional Conduct. The civil immunity we acknowledge in this case attaches only to conduct within the scope of the guardian's duties. *Short by Oosterhous, supra,* 730 F.Supp. at 1039. The appointing court is required by statute to supervise the guardian's faithful performance and to discharge him if he fails to perform competently. §§ 452.423.3, 210.160.3 RSMo Supp.1992. Persons appointed to perform guardian ad litem duties must have completed a training program in permanency planning. § 210.-160.6 RSMo Supp.1992. The trial court is not bound by and may accept, modify or reject the guardian's recommendations as it deems appropriate. *Brooks v. Division of Children's Services,* 411 S.W.2d 276, 282 (Mo. App.1967). Parents may advocate positions contrary to the guardian and all determinations of the reviewing court are subject to judicial review. Under such circumstances, any marginal improvement in the accountability of guardians that would arguably be advanced by permitting civil liability is far outweighed by the adverse impact on the guardian's independence which serves as the cornerstone of Missouri's statutory scheme.

The allegations of negligence advanced in this case fall squarely within the scope of Guardian's duties as court appointed guardian ad litem.[9] Accordingly, we find that Guardian is absolutely immune from liability for the conduct alleged in Father's petition and order that our preliminary writ of prohibition heretofore issued be made permanent and the cause be remanded to Respondent with directions to dismiss the claim against Guardian with prejudice and for further proceedings consistent with this opinion.

CARL R. GAERTNER and SIMON, JJ., concur.

---

8. See note 2, *supra.*

9. Nothing in this opinion should be read as a determination that there is any substance to these allegations. In fact, although we accept the facts pleaded as true for purposes of our

analysis, we note that many, if not all, of the allegations conflict with or are refuted by the records filed herein and in other proceedings before this court.