**James Michael WARD, Plaintiff,**

v.

**SAN DIEGO COUNTY DEPARTMENT OF SOCIAL SERVICES; et al., Defendants.**

**Civ. No. 87–0938–JLI (CM).**

United States District Court, S.D. California.

Aug. 5, 1988.

Karen Stawiecki, San Diego, Cal., for plaintiff.

Gerard Smolin, Jr. and Dearing English of Jennings, Engstrand & Henrickson, San Diego, Cal., for defendants Voices for Children and Charlotte Gerry.

## MEMORANDUM DECISION AND ORDER

IRVING, District Judge.

Plaintiff James Ward ("Ward" or "Plaintiff") is the father of a minor child, Gerrit Ward, and defendant Emily Hayes ("Hayes") is Gerrit's mother. Hayes and Ward were divorced and in 1984 the court awarded custody of Gerrit to Ward. In early March 1986, while visiting his mother, Gerrit apparently told her that his stepmother was abusing him. As a result, Hayes refused to return Gerrit to his father. Hayes notified the Department of Social Services ("DSS") of the allegations and requested a change of custody.

DSS immediately began to investigate the situation. On March 10, 1986, a dependency proceeding was initiated to make Gerrit a ward of the court due to his emotional problems. The court named Gerrit a dependent of the court under California Welfare and Institutions Code § 300(a) (West 1986) on June 25, 1986. On July 1, 1987, the juvenile court judge appointed defendant Charlotte Gerry ("Gerry") to serve as the Special Advocate Guardian Ad Litem ("guardian ad litem") for Gerrit.

Gerry is a volunteer for defendant Voices for Children ("Voices"), a non-profit organization operating under the supervision of the Juvenile Court pursuant to California Welfare and Institutions Code §§ 356.5 and 358 (West 1988). The purpose of Voices is to facilitate the movement of dependent minors from temporary placement to permanent homes. Voices selects and trains individuals to do this job and then the Juvenile Court appoints the volunteers to serve as guardians ad litem. The guardian ad litem conducts factual investigations and makes recommendations to the court regarding the placement which

will be in the child's best interest. The guardian ad litem serves at the discretion of the juvenile court judge; the appointment may be terminated at any time by court order.

Pursuant to her appointment, Gerry began an investigation into the facts surrounding Gerrit's situation. Gerry spoke with a number of individuals who knew Gerrit and/or his family. Gerry was unable to speak to Plaintiff or his wife. Gerry also had access to any records regarding Gerrit or meetings concerning him. Throughout her investigation, Gerry submitted a number of reports to the court for its consideration in deciding Gerrit's placement.

In his complaint, Plaintiff alleges, *inter alia,* that defendant Gerry acted outside the scope of her authority while undertaking her investigation and that she treated Plaintiff unfairly and in violation of his constitutional rights. In the hearing on this motion, Plaintiff stated that his only theory of liability against Voices is respondeat superior. Defendants Gerry and Voices argue that summary judgment should be granted in their favor on the grounds of absolute quasi-judicial immunity.

## DISCUSSION

■ The United States Supreme Court has held that various participants in the judicial process are immune from liability. As examples, the Court has held that judges are immune from liability for their judicial acts (*Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967)); prosecutors are immune for their actions in initiating prosecutions (*Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)); and, advocates and witnesses are immune for the performance of their respective functions (*Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978); *Briscoe v. LaHue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983)). In granting these individuals immunity, the Court focused on the "nature of the judicial proceeding itself" and the "policy of protecting the judicial process." *Briscoe,* 460 U.S.

at 334, 103 S.Ct. at 1115 (citations omitted). The Court has stated that

> [t]he ability of courts, under carefully developed procedures, to separate truth from falsity, and the importance of accurately resolving factual disputes in criminal (and civil) cases are such that those involved in judicial proceedings should be 'given every encouragement to make a full disclosure of all pertinent information within their knowledge.'

*Id.* at 335, 103 S.Ct. at 1115 (citation omitted). Accordingly, all persons who perform functions which are an "integral part of the judicial process" are immune from liability. *Id.*

The Ninth Circuit has determined that a variety of other jobs or functions are an integral part of the judicial process and, therefore, entitled to absolute quasi-judicial immunity. In *Demoran v. Witt,* 781 F.2d 155 (9th Cir.1986), the court held that probation officers preparing presentencing reports for judges are entitled to absolute immunity. The Court reasoned that in preparing the reports, the probation officers serve as an "arm of the sentencing judge" by "engag[ing] in impartial fact-gathering." *Id.* at 157. The court expressed its concern that potential civil liability would "seriously erode the officer's ability to carry out his independent fact-finding function and thereby impair the sentencing judge's ability to carry out his judicial duties." *Id.* (citations omitted).

In *Meyers v. Contra Costa County Dept. of Soc. Serv.,* 812 F.2d 1154 (9th Cir.1987), *cert. denied* —— U.S. ——, 108 S.Ct. 98, 98 L.Ed.2d 59 (1987), the court ruled that social workers are entitled to absolute quasi-judicial immunity in performing quasi-prosecutorial functions connected with the initiation and pursuit of child dependency proceedings. The court reasoned that social workers are similar to prosecutors in that they are responsible for initiating dependency proceedings and for exercising independent judgment in determining when to bring such actions. *Id.* at 1157. The court wanted to avoid the possibility of compromising the social worker's independence by subjecting him or her to

civil liability. *Id.* The court has also held that a social worker has absolute immunity for seeking, obtaining and executing a court order to seize a newborn child from its mother. *Coverdell v. Dept. of Soc. and Health Serv.*, 834 F.2d 758, 762–5 (9th Cir. 1987). The court opined that the social worker's actions in seeking and obtaining the order were within her statutory authority as a quasi-prosecutor and that executing the order was done as an extension of the judge. *Id.* at 764–5.

Although the Ninth Circuit has yet to apply the theory of absolute quasi-judicial immunity to guardians ad litem, other circuits have done so. In a recent case, the Eighth Circuit held that guardians ad litem appointed by the court to represent children had absolute quasi-judicial immunity in their actions of questioning the children, testifying to the family court, and providing their reports and recommendations to the family court. *Myers v. Morris*, 810 F.2d 1437, 1466–7 (8th Cir.1987), *cert. denied* — U.S. —, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987). The court reasoned that the guardians ad litem were appointed by the court under "its statutory authority to seek the assistance of experts" to "fulfill quasi-judicial responsibilities under court direction." *Id.* at 1467.

The Sixth Circuit has also held that a guardian ad litem is entitled to absolute quasi-judicial immunity. *Kurzawa v. Mueller*, 732 F.2d 1456 (6th Cir.1984). The *Kurzawa* court stated that a guardian ad litem "must act in the best interests of the child he represents [and s]uch a position clearly places him squarely within the judicial process." *Id.* at 1458. The court opined that "[a] guardian ad litem must also be able to function without the worry of possible later harassment and intimidation from dissatisfied parents." *Id.*

■ The reasoning of the *Myers* and *Kurzawa* courts is directly applicable to the case at issue. On July 1, 1986, the juvenile court judge signed an order appointing Charlotte Gerry of Voices as the guardian ad litem for Gerrit. The order stated that Gerry would have access to all of Gerrit's records, that she would be given notice of and be authorized to attend all conferences and hearings regarding Gerrit, that Gerry would "investigate and report to the court such information as would assist this child in obtaining a permanent home," and that Gerry was to serve as guardian ad litem until further order of the court. All of the investigative work conducted by Gerry was done pursuant to this court order.[1] As guardian ad litem, Gerry was acting as an extension of the court by performing the quasi-judicial functions of investigating the facts and reporting to the court what placement was in Gerrit's best interest.

A final factor in determining whether Gerry is entitled to absolute quasi-judicial immunity as a guardian ad litem is the policy considerations underlying this grant of immunity. The United States Supreme Court has stated that "paths which lead to the ascertainment of truth should be left as free and unobstructed as possible." *Briscoe*, 460 U.S. at 333, 103 S.Ct. at 1114. A guardian ad litem serves to provide the court with independent information regarding the placement or disposition which is in the best interests of the child. This independent determination is crucial to the court's decision. The threat of civil liability would seriously impair the ability of the guardian ad litem to independently investigate the facts and to report his or her findings to the court. As a result, the ability of the judge to perform his or her judicial duties would be impaired and the ascertainment of truth obstructed.

A second public policy consideration is that the judicial system provides procedural safeguards to protect against misconduct so that the threat of civil liability is

---

**1.** "Absolute immunity fails to attach to judicial officers only when they act clearly and completely outside the scope of their jurisdiction. Allegations of malice or bad faith in the execution of the officer's duties are insufficient" to overcome absolute immunity. *Demoran*, 781 F.2d at 158 (citations omitted). This court finds that there is no evidence to support the allegation that Gerry acted "clearly and completely" outside the scope of her authority so as to possibly incur civil liability.

not necessary. *Meyers*, 812 F.2d at 1158 (citing *Butz*, 438 U.S. at 512, 98 S.Ct. at 2913). In child custody determinations, the non-custodial parent may appeal the decision and if there are constitutional violations or other irregularities, the court of appeals can reverse the determination. In this case, Plaintiff did appeal the award of custody to defendant Hayes. However, after review, the court of appeals affirmed the award of Gerrit's custody to Hayes. A final safeguard is that the juvenile court is not bound by the recommendations of the guardian ad litem. The court may accept, reject or modify the recommendations as it feels appropriate. In addition, the court can terminate the guardian ad litem appointment at any time if it feels there are improprieties.

For these reasons, this court finds that defendant Gerry is entitled to absolute quasi-judicial immunity for her actions as guardian ad litem for Gerrit. Gerry was acting pursuant to court order and was functioning as an extension of the court. Because plaintiff's only theory of liability against defendant Voices For Children is respondeat superior, this court also finds that Voices is entitled to absolute quasi-judicial immunity. Accordingly, the motion for summary judgment is granted on behalf of defendants Charlotte Gerry and Voices for Children.

IT IS SO ORDERED.