Mary Louise Rosas v. The State of Texas
















IN THE
TENTH COURT OF APPEALS
 

No. 10-97-199-CR

Â Â Â Â Â MARY LOUISE ROSAS,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant
Â Â Â Â Â v.

Â Â Â Â Â THE STATE OF TEXAS,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee
 

From the 87th District Court
Freestone County, Texas
Trial Court # 97-011-CR
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

O P I N I O N
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â Â Â Â Â Â Mary Louise Rosas entered a plea of guilty to the court on the charge of burglary of a
habitation. See Tex. Pen. Code Ann. Â§ 30.02 (Vernon 1994). Pursuant to a plea bargain, the
court assessed punishment at five yearsâ deferred adjudication. In her first point of error, Rosas
argues that her plea was involuntary. The second point of error urges that her counsel was
ineffective because of a conflict of interest at the motion for new trial hearing. 
Â Â Â Â Â Â Rosas filed a general notice of appeal and thus, may not appeal nonjurisdictional errors. Tex.
R. App. P. 40(b)(1), 49 Tex. B.J. 566 (Tex. Crim. App. 1986).


 A claim of ineffective assistance
of counsel has been held to be a nonjurisdictional error. Lyon v. State, 872 S.W.2d 732, 736
(Tex. Crim. App. 1994); Williams v. State, 960 S.W.2d 758, 759 (Tex. App.âHouston [1st Dist.]
1997, n.p.h.); McCowan v. State, 961 S.W.2d 24, 26 (Tex. App.âDallas 1996, n.p.h.). 
Therefore, we have no jurisdiction to address Rosasâ ineffective assistance of counsel complaint.
We dismiss her second point of error for want of jurisdiction.
Â Â Â Â Â Â However, we may address Rosasâ complaint that her plea was involuntary. See Flowers v.
State, 935 S.W.2d 131, 134 (Tex. Crim. App. 1996) (voluntariness of a plea is a jurisdictional
issue). A voluntary plea is one made with full awareness of the direct consequences. Ex parte
Griffin, 679 S.W.2d 15, 17 (Tex. Crim. App. 1984). The entire record must be examined to
determine the voluntariness of the plea. Williams v. State, 522 S.W.2d 483, 485 (Tex. Crim.
App. 1975). 
Â Â Â Â Â Â Rosas contends that her plea was involuntary because the court stated the incorrect range of
punishment during admonishments. The reporterâs record reflects that the court stated the range
of punishment as two to fifty years. However, the State filed a motion to correct an inaccuracy
in the reporterâs record. The motion contained the court reporterâs affidavit which stated that a
mistake was made during proofreading and the record should read that the punishment was up to
twenty years. We granted the motion to correct the inaccuracy and therefore the reporterâs record
shows that Rosas was informed of the correct range of punishment, two to twenty years, for a
second degree felony. Thus, Rosasâ plea is not involuntary due to an incorrect range of
punishment. 
Â Â Â Â Â Â Rosas also contends that her plea was involuntary because her counsel failed to inform her of
her right to cross-examine witnesses and her right to a jury trial. When the record shows that the
court properly admonished the defendant, it presents a prima facie showing that the guilty plea was
knowing and voluntary. Rodriguez v. State, 933 S.W.2d 702, 705 (Tex. App.âSan Antonio
1996, pet. refâd); Miller v. State, 879 S.W.2d 336, 338 (Tex. App.âHouston [14th Dist.] 1994,
pet. refâd). The burden then shifts to the defendant to show that the plea was entered without
knowledge of the circumstances. Rodriguez, 933 S.W.2d at 706; Miller, 879 S.W.2d at 338. 
Rosas testified at her new trial hearing that she was not informed of these rights but the record of
the plea hearing reflects that the court informed her of the right to a jury trial and the right to
question witnesses. Rosas said that she understood that she was waiving these rights. Further,
her counsel asked her if he had advised her of the right to a jury trial, to which Rosas answered,
âYes, you did.â Thus, we find that the record reflects that Rosas was informed of her rights and
that she voluntarily waived them. 
Â Â Â Â Â Â Rosas also argues that her state of mind on the day of the plea hearing did not enable her to
answer in her best interest. At the hearing on her motion for new trial, Rosas testified that during
the plea hearing she was upset and had a lot of emotions and it was âthat time of the month.â The
following exchange occurred at the plea hearing:
[COURT]: And are you pleading guilty because you are guilty and for no other reason? 
Â 
[ROSAS]: I guess. Yeah.
Â 
[COURT]: Before I can accept a plea of guilty, I need to be assured that youâre doing
this freely and voluntarily.
Â 
[ROSAS]: Yes, I am.
Â 
[COURT]: Youâre doing this of your own free will?
Â 
[ROSAS]: Yeah. After talking with my attorney for the last three months, we just both
came to the conclusion this would be in my best interest.

* * * *
Â 
[COURT]: Okay. So thereâs no doubt youâre pleading guilty because you are guilty and
for no other reason?
Â 
[ROSAS]: (Nods head.) Yes, I guess. (Crying.)

At this point, the court takes a ten minute recess so that Rosas can think about her plea. When
the court reconvened, the judge asked Rosas, âAre you pleading guilty because you are guilty and
for no other reason?â Rosas replied, âYes, sir.â 
Â Â Â Â Â Â While we acknowledge that Rosas appeared hesitant and expressed emotions during the plea
hearing, we cannot conclude that her state of mind prevented her from entering a voluntary plea. 
 Thus, we find that Rosas has not overcome the presumption that her plea was entered knowingly
and voluntarily. Therefore, we overrule the first point of error.
Â Â Â Â Â Â We affirm the judgment.
Â 
 REX D. DAVIS
 Chief Justice


Before Chief Justice Davis
Â Â Â Â Â Â Â Justice Cummings and
Â Â Â Â Â Â Â Justice Vance
Affirmed
Opinion delivered and filed May 20, 1998
Do not publish



nguage:EN-US;mso-bidi-language:AR-SA'>[2]  The trial court granted the motion without
specifying the grounds and severed the cause from the remaining defendants.

STANDARD
OF REVIEW

Summary
Judgment

When a trial court's order granting
summary judgment does not specify the ground or grounds relied on for the
ruling, summary judgment will be affirmed on appeal if any of the theories
advanced are meritorious.Â  State Farm Fire & Cas. Co. v. S.S., 858 S.W.2d 374, 380 (Tex. 1993).

We review the decision to grant or
deny a summary-judgment motion de novo.Â  See
Rucker v. Bank One Texas, N.A., 36 S.W.3d 649, 653 (Tex. App.ÂWaco 2000, pet.
denied).Â  The standards for reviewing a
traditional motion for summary judgment are well established.Â  Nixon
v. Mr. Property Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985).Â 
The movant has the burden of showing that no genuine issue of material
fact exists and that he is entitled to the summary judgment as a matter of
law.Â  American
Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997); Ash
v. Hack Branch Distributing Co., 54 S.W.3d 401, 413 (Tex. App.ÂWaco 2001,
pet. denied).Â  The reviewing court must
accept all evidence favorable to the non-movant as true.Â  Nixon,
690 S.W.2d at 549; Ash, 54 S.W.3d at
413.Â  Every reasonable inference must be
indulged in favor of the non-movant and all doubts resolved in her favor.Â  American
Tobacco, 951 S.W.2d at 425; Ash,
54 S.W.3d at 413.Â  If the movant for
summary judgment is a defendant, then the movant must negate at least one of
the elements of the non-movant's cause of action, or alternatively, the movant
must conclusively establish each element of an affirmative defense.Â  Clifton
v. Hopkins, 107 S.W.3d 755, 757 (Tex. App.ÂWaco 2003, pet. denied).Â  The non-movant need not respond to the motion
for summary judgment unless the movant meets his burden of proof.Â  Rhone-Poulenc,
Inc. v. Steel, 997 S.W.2d 217, 222-23 (Tex. 1999). Â But
if the movant meets his burden of proof, the non-movant must present
summary-judgment evidence to raise a fact issue.Â  Centeq
Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex. 1995). 

We apply the same standard in
reviewing the grant or denial of a no-evidence summary-judgment motion as we
would in reviewing a directed verdict.Â  Ash, 54 S.W.3d at 413.Â  We review the summary-judgment evidence in
the light most favorable to the non-movant, disregarding all contrary evidence
and inferences.Â  Id.Â  A
no-evidence motion will be defeated if more than a scintilla of probative
evidence exists to raise a genuine issue of material fact on the element
challenged by the movant.Â  Id.Â  More
than a scintilla of evidence exists if it would allow reasonable and fair-minded
people to differ in their conclusions.Â  Forbes Inc. v. Granada Biosciences, Inc.,
124 S.W.3d 167, 172 (Tex.
2003) (business disparagement case).Â 
Evidence attached to a no-evidence motion should not be considered
unless it creates a fact issue.Â  See Binur v. Jacobo, 135 S.W.3d 646, 651
(Tex. 2004). 

Judicial
Immunity

Judges are absolutely immune from
liability for judicial acts performed in the course of judicial proceedings
over which they have jurisdiction. Turner
v. Pruitt, 342 S.W.2d 422, 423 (Tex. 1961); Houston v.
West Capital Fin. Servs., 961
S.W.2d 687, 689 (Tex. App.ÂHouston [1st Dist.] 1998, writ dism'd w.o.j.).Â  When judges delegate their authority or
appoint others to perform services for the court, the judgeÂs judicial immunity
may follow the delegation or appointment, which is called derived judicial
immunity.Â  Clements v. Barnes, 834 S.W.2d 45, 46 (Tex. 1992).

DERIVED
JUDICIAL IMMUNITY

Because Sanders was appointed
guardian ad litem in a federal court,
we will apply federal law to determine whether Sanders is entitled to derived
judicial immunity.

Functional Approach

The United States Supreme Court adopted
a functional approach to determine whether a party is entitled to
immunity.Â  Imbler v. Pachtman, 424 U.S. 409, 430-31, 96 S.Ct. 984, 994-96, 47 L.Ed.2d
128 (1976).Â  In Imbler, the Court stated:

[The prosecutor's] activities were intimately
associated with the judicial phase of the criminal process, and thus were
functions to which the reasons for absolute immunity apply with full force. We
have no occasion to consider whether like or similar reasons require immunity
for those aspects of the prosecutor's responsibility that cast him in the role
of an administrator or investigative officer rather than that of advocate. 

Â 

Id. (footnotes omitted); see also Forrester v. White, 484 U.S. 219, 224, 108 S.Ct. 538, 563, 98 L.Ed.2d 555
(1988) (ÂRunning through our cases . . . is a ÂfunctionalÂ approach to immunity
questions . . [under which] we examine the nature of the functions with which a
particular official or class of officials has been lawfully entrusted, and we
seek to evaluate the effect that exposure to particular forms of liability
would likely have on the appropriate exercise of those functions.Â).Â  The United States Supreme Court has extended
absolute immunity to various persons whose involvement with the judicial
process has been thought to warrant protection from interference with their
ability to engage in impartial decision-making.Â 
See Briscoe v. LaHue, 460 U.S.
325, 336, 103 S.Ct. 1108, 1116, 75 L.Ed.2d 96 (1983) (private witnesses in
judicial proceedings); Butz v. Economou,
438 U.S. 478, 512-14, 98 S.Ct. 2894, 2913-15, 57 L.Ed.2d 895 (1978) (federal
hearing examiner or administrative law judge); Stump v. Sparkman, 435 U.S. 349, 362, 364, 98 S.Ct. 1099, 1107-09,
55 L.Ed.2d 331 (1978) (state trial judge).

A number of
courts have held various participants in judicial proceedings absolutely immune
from liability for their actions taken in performance of their roles as
Âintegral parts of the judicial process.ÂÂ 
Â See, e.g., Babcock v. Tyler,
884 F.2d 497 (9th Cir. 1989) (social worker), cert. denied, 493 U.S. 1072, 110 S.Ct. 1118, 107 L.Ed.2d 1025 (1990); Meyers v. Contra Costa County Dep't of
Social Servs., 812 F.2d 1154 (9th Cir.) (same), cert. denied, 484 U.S. 829, 108 S.Ct. 98, 98 L.Ed.2d 59 (1987); Moses v. Parwatikar, 813 F.2d 891 (8th
Cir.) (court-appointed psychiatrist), cert.
denied, 484 U.S. 832, 108 S.Ct. 108, 98 L.Ed.2d 67 (1987); Demoran v. Witt, 781 F.2d 155 (9th Cir.
1985) (probation officer); Lawyer v.
Kernodle, 721 F.2d 632 (8th Cir. 1983) (pathologist assisting coroner); Wiggins v. New Mexico State Supreme Court
Clerk, 664 F.2d 812 (10th Cir. 1981) (members of state supreme court and
clerk), cert. denied, 459 U.S. 840,
103 S.Ct. 90, 74 L.Ed.2d 83 (1982); Boullion
v. McClanahan, 639 F.2d 213 (5th Cir. 1981) (bankruptcy trustee); T & W Inv. Co. v. Kurtz, 588 F.2d
801 (10th Cir. 1978) (court-appointed receiver); Kermit Constr. Corp. v. Banco Credito y Ahorro Ponceno, 547 F.2d 1
(1st Cir. 1976) (same); Burkes v. Callion,
433 F.2d 318 (9th Cir. 1970) (probation officer and court-appointed medical
examiner), cert. denied, 403 U.S.
908, 91 S.Ct. 2217, 29 L.Ed.2d 685 (1971); Ashbrook
v. Hoffman, 617 F.2d 474 (7th Cir. 1980) (partition commissioner); Wagner v. Genesee County Bd. of Comm'rs,
607 F. Supp. 1158 (E.D. Mich. 1985) ("friend of the court" in family
court proceedings).

The Fifth Circuit
adopted the functional approach in decisions denying absolute immunity to
social workers. Â See Hodorowski v. Ray, 844 F.2d 1210, 1213-15 (5th Cir. 1988) (finding
absolute immunity is not essential to the proper functioning of child
protective service workers); Austin v.
Borel, 830 F.2d 1356, 1361-63 (5th Cir. 1987) (finding child protection
workers not entitled to absolute immunity for their conduct in filing an
allegedly false verified complaint seeking the removal of two children from a
home, which the court analogized to a probation officerÂs filing of a probation
report that causes arrest of a person on probation). Â Â 

Guardians Ad Litem

The Sixth Circuit
held that a guardian ad litem for a
child in a dependency and neglect proceeding and a subsequent proceeding to
terminate the parentsÂ parental rights was entitled to absolute immunity.Â  Kurzawa
v. Mueller, 732 F.2d 1456, 1458 (6th Cir. 1984).Â  The court stated that the guardian ad litem:

must act in the best interests of the child he
represents.Â  Such a position clearly
places him squarely within the judicial process to accomplish that goal.Â  A guardian ad litem must also be able to
function without the worry of possible later harassment and intimidation from
dissatisfied parents.

Â 

Id.Â  Other
courts have reached similar results that guardian ad litems should be free to operate without the prospect of
liability.Â  See Cok v. Cosentino, 876 F.2d 1, 3 (1st Cir. 1989) (guardian ad litem for child in divorce proceeding
acted as Âagent of the courtÂ); Myers v.
Morris, 810 F.2d 1437, 1466-67 (8th Cir.) (guardian ad litem for children in investigation of alleged sexual abuse
immune from performance of Âdelegated functionsÂ), cert. denied, 484 U.S. 828 (1987); Short v. Short, 730 F. Supp. 1037, 1039 (D. Colo. 1990) (guardian ad litem for children in custody dispute
immune for acts as Âagent of the courtÂ).Â 
In Ward v. San Diego County
Department of Social Services, the guardian ad litem of a child performed factual investigations and made
recommendations to the court regarding the placement which was thought to be in
the childÂs best interests.Â  Ward. v. San
 Diego County
DepÂtÂ  of Social Servs., 691 F. Supp. 238, 240 (S.D. Cal. 1988).Â 
The court stated:

As guardian ad litem, [the guardian] was acting
as an extension of the court by performing the quasi-judicial functions of
investigating the facts and reporting to the court what placement was in [the
childÂs] best interests.

Â 

A guardian ad litem serves to provide the court
with independent information regarding the placement or disposition which is in
the best interests of the child.Â  This
independent determination is crucial to the courtÂs decision.Â  The threat of civil liability would seriously
impair the ability of the guardian ad litem to independently investigate the
facts and to report his or her findings to the court.Â  As a result, the ability of the judge to
perform his or her judicial duties would be impaired and the ascertainment of
truth obstructed.

Â 

Id.

Although the
Third Circuit did not reach the issue, it provided the following guidance:

Under [the functional] approach, a guardian ad
litem would be absolutely immune in exercising functions such as testifying in
court, prosecuting custody or neglect petitions, and making reports and
recommendations to the court in which the guardian acts as an actual
functionary or arm of the court, not only in status or denomination but in
reality. This does not exhaust the list of functions which would be absolutely
immune, and each function would have to be analyzed on a case-by-case basis.

Â 

Thus, the district court should, if faced with
this issue again, analyze each of the functions performed by [the guardian ad
litem] and determine if acts allegedly committed pursuant to those functions
warrant immunity under the foregoing analysis.

Â 

Gardner v.
Parson, 874 F.2d 131, 146 (3d
Cir. 1989).

Â 

Arguments

Among other grounds, Sanders
asserted the following traditional summary judgment ground:

Sanders is entitled to judgment as a matter of
law that Plaintiff take nothing on her claims, because the undisputed summary
judgment evidence establishes as a matter of law that Sanders is exempted from
liability for his actions as guardian ad litem in the Federal Court Action
under the doctrine of derived judicial immunity.

Â 

Sanders argues that we should apply the
functional approach and affirm the summary judgment because he, as guardian ad litem, is entitled to derived
judicial immunity. 

Wilz argues that a Texas case, Byrd
v. Woodruff, controls this courtÂs analysis.Â  In Byrd,
a Texas appellate court found that the guardian ad litem appointed under Rule 173 does not act as an Âarm of the
courtÂ because the ad litem is acting
as a personal representative and advocate for the interest of the minor, which
are not duties the court normally performs.Â 
Byrd v. Woodruff, 891 S.W.2d
689, 708-10 (Tex. App.ÂDallas 1994, writ denied). Â She argues that Sanders is not entitled to
immunity because he was Âappointed to represent the interests of the Ward,
displacing Kenneth Flournoy, the WardÂs father, as next friend, in the Federal
lawsuit.ÂÂ  She asserts that a guardian ad litem is not an agent of the court,
but instead acts to protect the best interests of his ward.

Application

We agree that a guardian ad litem should be absolutely immune
when acting as an Âintegral part of the judicial process.ÂÂ  See
Briscoe, 460 U.S. at 335, 103 S.Ct. at 1116.Â  Following the United States Supreme Court, we
will apply the functional approach to determine whether Sanders as a guardian ad litem is absolutely immune.Â  See Imbler,
424 U.S. at 430-31, 96 S.Ct. at 994-96; Gardner, 874 F.2d at 146. Â To be entitled to summary judgment in this
case, Sanders had to prove as a matter of law that his appointment contemplated
that he act as an Âarm of the courtÂ and that he did not depart from the scope
of his appointment.

United States District Judge Sam B.
Hall, Jr. appointed Sanders as guardian ad
litem in an order stating: 

The Court has been advised by the
parties or their attorneys that all matters in the above-styled cause have been
settled and compromised, and that the appointment of a Guardian Ad Litem is
necessary.Â Â  It is, therefore,

Â 

Â Â Â Â Â Â Â Â  .
. .

Â 

Â Â Â Â Â Â Â Â  It
is further ORDERED that Jack Sanders, Jr., attorney at law in Marshall, Texas, shall be appointed Guardian ad Litem.

Â 

The federal court
later approved the compromise settlement after a hearing stating in its
judgment that:

. . ., and the Court being of the opinion that
it would be in the best interest of the Plaintiff to appoint an attorney ad
litem[3]
to represent the interests of Jon Flournoy, and the Court having under separate
order appointed attorney Jack Sanders, Jr. to serve in such capacity and it
being made known to the Court by the duly appointed attorney ad litem that in
his opinion the settlement as announced is in the best interest of the
incapacitated adult, Jon Flournoy, the Court does hereby approve the compromise
settlement and enters the following judgment.

Â 

Sanders testified that he briefly met with Flournoy, not the Ward,
the morning of the settlement hearing.Â 
In SanderÂs summary judgment affidavit, he states:

. . . 

Â 

I was appointed guardian ad litem for the Ward
in the Federal Court Action by order dated March 4, 1991.Â  I was
never asked to have any involvement in the First Guardianship Proceeding [in Harrison County].

Â 

. . .

Â 

Pursuant to the Federal CourtÂs order, I was to investigate
and evaluate the fairness and reasonableness of the settlement and report to
the court whether the Compromise Settlement Agreement was in the best interests
of the Ward to assist the court in its determination of whether the Compromise
Settlement Agreement should be approved by the Federal Court.

Â 

. . .

Â 

My only connection to the Ward was a guardian ad
litem in the Federal Court Action. I have never had an attorney-client
relationship with the Ward.

Â 

. . .

Â 

As guardian ad litem for the Ward, I conducted a
thorough investigation of the damages suffered by the Ward, the adequacy of the
settlement, the proposed distribution of the settlement proceeds among the
interested parties, the proposed manner of disbursement of the settlement
proceeds, and the amount of the attorneyÂs fee charged by Mr. BaxterÂs firm.[4]Â  In accordance with my normal practice, I
would have discussed the case in detail with Mr. Baxter.Â  I would also have reviewed Mr. BaxterÂs
entire file, including the documentation supporting disbursements to be made
from the settlement proceeds.Â  At the March 22,
 1991 fairness hearing
in the Federal Court Action, I reported to the Federal Court my belief that the
Compromise Settlement Agreement was fair and reasonable and in the best
interest of the Ward to accept.

Â 

We
find that the undisputed evidence shows that the federal court appointed
Sanders to assist the court by investigating the fairness and reasonableness of
the settlement and report to the court whether the settlement was in the best
interests of the Ward.Â  See Ward, 691 F. Supp. at 240.Â  Also, there is nothing in the summary
judgment evidence to indicate that Sanders acted outside the scope of his
appointment or that he departed from his role as a functionary of the court in
making a recommendation to the court.Â  Thus,
we hold that the summary judgment evidence was sufficient to establish the
affirmative defense of derived judicial immunity.Â  See Gardner, 874 F.2d at 146.Â  Sanders, as guardian ad litem, was required to make an independent determination that
was crucial to the courtÂs decision; therefore, any threat of liability would
impair his ability to independently investigate the facts, which would impair
the judgeÂs ability to perform his duties.Â 
See Kurzawa, 732 F.2d at 1458;
Ward, 691 F. Supp. at 240.Â  We distinguish this case from Byrd because Sanders was not appointed
under Texas Rule 173 to displace and act in place of Flournoy, the next friend
of the Ward; he was appointed by the federal court under Federal Rule 17(c),
and Flournoy, as next friend of the Ward, was not replaced by Sanders.Â  See
Byrd, 891 S.W.2d at 708-10.Â  Also,
the summary judgment evidence indicates that Sanders was not the WardÂs
personal representative or advocate.Â  See id.Â 
In addition, even if we rely on Texas law, we would reach the same conclusion because
the Texas Supreme Court has also adopted the functional approach.Â  Dallas
County, Texas v. Halsey, 87 S.W.3d 552, 556-57 (Tex. 2002) (applying the functional approach to find
that the court reporter was not entitled to derived judicial immunity because
she Âdid not exercise discretion comparable to that of a judgeÂ).

The
burden shifted to Wilz to present evidence of a fact issue.Â  See
Siegler, 899 S.W.2d at 197.Â  However,
Wilz has not presented any summary judgment evidence contraverting the scope of
SandersÂ appointment or that he acted within the scope of his appointment.Â  Therefore, we hold that the trial court did
not err in granting SandersÂ motion for summary judgment.Â  See id.

We
overrule issue one.Â  We do not reach
issues two and three.Â  See State Farm, 858 S.W.2d at 380.




CONCLUSION

We affirm the summary judgment.

Â 

Â 

BILL VANCE

Justice

Â 

Before Chief Justice Gray,

Justice Vance, and

Justice Reyna

Â Â Â Â Â Â Â Â Â  (Chief Justice Gray
concurring)

Affirmed

Opinion delivered and filed February
 23, 2005

[CV06]











Â Â Â  [1]Â Â Â Â Â Â  Wilz asserted a fourth issue regarding
severance; however, this issue was withdrawn in a letter brief following oral
argument.





Â Â Â  [2]Â Â Â Â Â Â  This motion contained seven traditional
grounds for summary judgment and 19 no-evidence grounds.





Â Â Â  [3]Â Â Â Â Â Â  Based on Judge HallÂs order, we assume he
means ÂguardianÂ and not ÂattorneyÂ ad
litem in this judgment.





Â Â Â  [4]Â Â Â Â Â Â  Mr. Baxter represented Flournoy in
federal court and in the guardianship proceeding in Harrison County.