Modified Opinion:
June 25, 2025



# MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| FELISHA DESPAIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **WD87182** |
| | ) | **Consolidated with WD87268** |
| NATHAN DESPAIN and | ) | |
| BRANDI JUDAH, Guardian | ) | **Filed: June 17, 2025** |
| *ad litem,* | ) | |
| | ) | |
| Respondents, | ) | |
| | ) | |
| ROSE C. BRISCOE, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Andrew County
The Honorable Emily M. Bauman, Judge**

**Before Division Three: Edward R. Ardini, P.J., and
Alok Ahuja and Thomas N. Chapman, JJ.**

Felisha DeSpain ("Mother") filed a petition to dissolve her marriage to Nathan DeSpain ("Father") in the Circuit Court of Andrew County. Mother was represented by attorney Rose Briscoe. The circuit court appointed Brandi Judah to serve as guardian *ad litem* (or "GAL") for the parties' two minor children.

During the dissolution proceeding, Mother shared with Briscoe two audio recordings made by the parties' Son,[1] of meetings between Son, GAL Judah, and a court-appointed family Therapist. Briscoe referenced the recordings in correspondence with Judah, and in a motion filed with the circuit court to remove Judah as guardian *ad litem*.

The circuit court found that Judah's communications with Son were subject to the attorney-client privilege and work product protection, and awarded Judah sanctions against Briscoe based on Briscoe's retention and use of the audio recordings. Briscoe appeals. We reverse, and remand the case to the circuit court.

## Factual Background

Mother and Father were married in 2005. They had two children together. Son was fourteen years old at the time the dissolution proceeding was filed, but is now seventeen. Daughter is five years younger than Son.

The parties separated in February 2022. On March 13, 2022, Mother filed a petition for dissolution of the parties' marriage in the Circuit Court of Buchanan County. Mother was represented by Briscoe throughout the dissolution proceeding.

On April 14, 2022, the circuit court granted Father's motion for change of venue to Andrew County. Because of allegations of abuse Mother made against Father in the dissolution proceeding, and in separate litigation seeking orders of protection against Father, the circuit court appointed Judah to serve as guardian *ad litem* for the children on May 12, 2022.

---

[1] Pursuant to § 509.520.1(5), RSMo, we do not provide the names of any non-party witnesses in this opinion.

Mother expressed concerns to Briscoe that Judah was not spending sufficient time with the children, and Briscoe corresponded with Judah to relay Mother's concerns. In addition, Mother contended that Son had complained that Judah was forcing Son to have unwanted and traumatic contact with Father, and that Judah was not listening to Son's wishes, or communicating Son's preferences to the circuit court.

During the course of the dissolution case, the circuit court appointed Therapist to engage in family therapy with the children and Father, and testify as to her observations.

The dissolution proceeding was set for trial before the circuit court on October 26, 2022. In early October 2022, Son surreptitiously recorded two of his sessions with Therapist. One session involved Son, Judah, and Therapist; the other involved Father, Son, and Therapist. Son shared these recordings with his Mother. Mother told attorney Briscoe about the recordings, and Briscoe requested that Mother send them to her. Mother emailed the two recordings to Briscoe on October 20, 2022.

In testimony before the circuit court, Briscoe denied that she had any direct communications with Son; that she had asked Son directly or through Mother to record Son's communications with the GAL or Therapist; or that she knew the recordings existed prior to her e-mail communications with Mother on October 20, 2022. The circuit court's sanctions judgment explicitly finds that "Ms. Briscoe did not have any direct communications with [Son]." Moreover, the sanctions judgment finds that Mother provided the recordings to Briscoe "upon Ms. Briscoe's request *after learning of their existence*." (Emphasis added.)

3

Thus, it appears that the circuit court credited Briscoe's testimony that she had no knowledge of the recordings' existence before October 20, 2022.

On the same day on which she received the recordings from Mother, Briscoe emailed Judah, informing her of the existence of the recordings and asking that Judah share her recommendation in the case. Judah stated that she would provide her recommendation at trial after the presentation of evidence.

On October 25, Briscoe sent a further email to Judah, in which she stated:

> It has come to my attention that [Son] recorded a few sessions with [Therapist] simply because he was tired of [Therapist] saying that he said or didn't say something.

> There is one particular recording in which you were present, and I have attached a link to that recording, which I have every intention on using at trial. Quite frankly, I am appalled.

> [quoting fourteen statements attributed to Judah, purportedly derived from the recording]

> These kids have been traumatized, and it appears that this brow beating session was not therapeutic, but instead an attempt to make it easier for you to make a recommendation if [Son] would simply cooperate. You can't rush a child out of trauma, and his cries for help seem to have been completely ignored throughout the case. I see why he's been begging to speak to the judge.

> As the Guardian ad Litem, you have your own case to present at trial on behalf of the minor children, including the presentation of your own evidence. It will be interesting to see what that looks like.

> Again, what is your recommendation in this case.

Several of the statements from the recording which Briscoe quoted in her email related to the temperament of the judge hearing the case.

In response to Briscoe's October 25 email, Judah once again stated that she would provide her recommendation after the presentation of evidence at trial.

Later on October 25, Briscoe filed a motion seeking to continue the trial; to remove Judah as guardian *ad litem*; to excuse the children from further family counseling sessions with Therapist; and to have the court personally interview the children. Judah responded on the morning of trial by filing an emergency motion to strike Briscoe's October 25 motion and have the motion placed under seal. Judah also sought the imposition of sanctions against both Mother and Briscoe.

On November 1, 2022, the circuit court entered an order imposing sanctions on Briscoe. The court entered a final judgment in the dissolution action on December 27, 2022. Mother timely moved for a new trial, and on April 20, 2023, the circuit court vacated the existing dissolution judgment, and reopened the evidence in the case. (By this time, the circuit judge who had originally entered the sanctions order and dissolution judgment had retired, and the case was reassigned to his successor.)

On March 8, 2023, the circuit court held a hearing on the sanctions motion. Briscoe was represented by independent counsel, and testified on her own behalf.

Following the hearing, the circuit court entered a ten-page order imposing sanctions on Briscoe on December 26, 2023. The circuit court concluded that communications between Judah, as guardian *ad litem*, and the children were protected by the attorney-client relationship, and that the family counseling sessions conducted by Therapist were subject to the therapist-patient privilege recognized in § 337.636.[2]

---

[2] Statutory citations refer to the 2016 edition of the Revised Statutes of Missouri, updated by the 2024 Cumulative Supplement.

5

The Court, in considering all relevant legal authority, finds that the GAL, Brandi Judah, had a quasi-attorney-client relationship with the [Son] and [Daughter], and communications between the GAL and the minor children were protected by the privilege of confidentiality afforded to an attorney and her client(s). Further, that [Family Therapist] was acting in a professional capacity when treating the [Son] in therapeutic setting and privilege did, in fact, exist between [Family Therapist] and the minor child.

In finding that a guardian *ad litem* serves in a "quasi-attorney-client relationship" with their ward, the circuit court explained that "[a] GAL serves in a hybrid role, and Missouri's laws use language evincing adherence to both the traditional attorney-client privilege and a best-interest standard, under which the GAL would represent the best interest of the child."

The circuit court's sanctions order also concluded, without extended discussion, that "work product protection attached to the GAL's communications with minor child . . . and [Therapist]."

The circuit court found that Briscoe's acts of listening to, and then exploiting, the recording justified the imposition of sanctions under the court's inherent authority, because Briscoe had acted in bad faith.

This Court finds that the relationship between the GAL and the minor child is one where the privilege of confidentiality existed, that the minor child could not consent to or waive such privilege, that the privilege was not waived at the time of the recording on October 12, 2022, that Ms. Briscoe knew or should have known the communication on the recordings between [Son] and the GAL were privileged communications, that Ms. Briscoe listened to communication between [Son] and the GAL that she knew or should have known was privileged, used said recordings in an attempt to leverage a recommendation from the GAL and/or gain a strategic advantage, and that in doing so she acted in bad faith.

6

The circuit court imposed a sanction of $800.00 on Briscoe, and ordered that Briscoe send a copy of the recordings in her possession to the Office of Chief Disciplinary Counsel.

Briscoe filed her initial notice of appeal in the circuit court on January 26, 2024; that appeal was docketed in this Court as No. WD86889. Because the circuit court had not denominated its sanctions order as a judgment, we dismissed Briscoe's original appeal on February 22, 2024. Briscoe then requested that the circuit court denominate its sanctions order as a judgment, which the circuit court did on April 23, 2024. Briscoe filed a second notice of appeal on April 24, 2024. That appeal was docketed as No. WD87182. Because she was uncertain whether it was required in order to secure review of the sanctions ruling, Briscoe also separately appealed from the underlying dissolution judgment; that appeal was docketed as No. WD87268. We consolidated the appeals numbered WD87182 and WD87268, and both are resolved by this opinion.

**Discussion**

Briscoe's opening Brief asserts five Points Relied On. Three of Briscoe's Points challenge the circuit court's legal conclusions that the audio recordings were subject to the attorney-client privilege, the work-product doctrine, and the therapist-patient privilege. In addition, Briscoe argues that Son waived any applicable privileges by choosing to share the recordings of his meetings with the GAL and Therapist. Finally, Briscoe argues that there was insufficient evidence to establish that she acted in bad faith. Because we find Briscoe's first three Points to be dispositive, we do not address her claims concerning Son's ability to

7

waive any privilege, or concerning the sufficiency of the evidence to support a finding of bad faith.

Independent of any rule or statute, Missouri courts have the inherent authority to impose sanctions based on the conduct of litigants and attorneys in proceedings before the court.

> The purpose of allowing courts to impose sanctions based on their inherent authority is two-fold: one, to allow the court to vindicate judicial authority without resort to the more drastic sanctions like contempt of court; two, to make a prevailing party whole for expenses caused by his opponent's obstinacy. A trial court may use its inherent powers and impose sanctions only when parties act in bad faith. . . .

> While there is no concrete definition of "bad faith," it embraces something more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another.

*Davis v. Wieland*, 557 S.W.3d 340, 349-50 (Mo. App. W.D. 2018) (cleaned up).

> A trial court's imposition of sanctions is reviewed for abuse of discretion. An abuse of discretion occurs when the court's order is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. If reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said that it abused its discretion.

*Id.* at 347-48 (cleaned up).

Importantly, a circuit court "can abuse its discretion . . . through the application of incorrect legal principles." *State v. Taylor*, 298 S.W.3d 482, 492 (Mo. 2009). A circuit court "necessarily abuses its discretion where its ruling is based on an erroneous interpretation of the law." *Bohrn v. Klick*, 276 S.W.3d

863, 865 (Mo. App. W.D. 2009) (citation omitted). Even when a particular ruling is subject to review only for an abuse of discretion, "when the issue is primarily legal, no deference is warranted and appellate courts engage in de novo review." *Taylor*, 298 S.W.3d at 492.

## I.

Briscoe's first Point argues that the circuit court misapplied the law in finding that communications between the guardian *ad litem* and Son were protected by attorney client-privilege. In her second Point, Briscoe argues that circuit court erred in concluding that the GAL's communications with Son were subject to the protection for attorney work product. We address Points I and II together.

Section 452.423.1 authorizes a court to appoint a guardian *ad litem* "[i]n all proceedings for child custody or for dissolution of marriage or legal separation where custody, visitation, or support of a child is a contested issue." Section 452.423.3, describes the responsibilities of a guardian *ad litem*:

> The guardian ad litem shall:
>
> (1)    Be the legal representative of the child at the hearing, and may examine, cross-examine, subpoena witnesses and offer testimony;
>
> (2)    Prior to the hearing, conduct all necessary interviews with persons having contact with or knowledge of the child in order to ascertain the child's wishes, feelings, attachments and attitudes. If appropriate, the child should be interviewed;
>
> (3)    Request the juvenile officer to cause a petition to be filed in the juvenile division of the circuit court if the guardian ad litem believes the child alleged to be abused or neglected is in danger.

9

Section 452.423.4 specifies that "[t]he appointing judge shall require the guardian ad litem to faithfully discharge such guardian ad litem's duties, and upon failure to do so shall discharge such guardian ad litem and appoint another."

The Missouri Supreme Court has promulgated Standards for Guardians *Ad Litem*. The Standards appear in Appendix C to the Supreme Court's Rules of Practice and Procedure in Juvenile Courts (Rules 110-130). Standard 1.0 specifies that a court may only appoint a licensed lawyer to serve as a guardian *ad litem*; the Comment to this standard explains that a GAL "shall act in accordance with the rules of professional conduct."

Although § 452.423.3(1) provides that a GAL shall be the child's "legal representative," and Standard 1.0 requires that a guardian *ad litem* be a licensed attorney, other provisions of the Supreme Court's GAL Standards make clear that a guardian *ad litem* is <u>not</u> the child's attorney. Thus, Standard 3.0 provides that "[a] guardian ad litem shall be guided by the best interests of the child and shall exercise independent judgment on behalf of the child in all matters." The Comment to this Standard distinguishes a GAL from a lawyer representing a child in the traditional sense:

> The roles of a guardian ad litem and a lawyer for the child are different and must be clearly distinguished. *A guardian ad litem is not the lawyer for the child* and, therefore, advocates the best interests of the child rather than merely representing the child's preferences.

(Emphasis added.)

The Standards clearly distinguish between a guardian *ad litem*'s advocacy of what the GAL *independently determines* to be in the child's best interests, and

advocacy for the child's own wishes (as an attorney representing a client would typically do).  While a GAL must make their own independent recommendation to the court, Standard 13.0 specifies that, "[d]uring the proceedings, the guardian ad litem must inform the court of the child's wishes and preferences even though different from the guardian ad litem's recommendation."  The Comment to Standard 13.0 recognizes that there may be situations where it is necessary to appoint an independent attorney to advocate for the child's own wishes:

> If the guardian ad litem determines there is conflict between advocating for the best interests of the child and representation of the child's preferences, the guardian ad litem shall continue to perform as the guardian ad litem for the child and may request that the court appoint another lawyer to represent the child's preferences.

The GAL Standards contemplate that a guardian *ad litem* may come into possession of confidential and privileged information, and has an obligation to safeguard the confidentiality of that information.  The Comment to Standard 7.0 explains:

> During the course of fulfilling the duties and obligations of serving as the guardian ad litem for a child, the guardian ad litem will have access to and will receive confidential and privileged information.  This information will apply not only to the child but also may pertain to a parent or other guardian for the child or others involved in the case.  This information includes but is not limited to children's division reports, educational records, and medical, psychological, and substance abuse treatment records.

Notably, while the Comment contemplates that a GAL may come into possession of confidential or privileged reports or records *generated by others*, the Comment does _not_ suggest that the GAL's own communications with a child, or with others, would themselves be confidential or privileged.  Indeed, the Comment to Standard 11.0 specifically contemplates that "[a] guardian ad litem

11

may testify to particular facts and issues before the court relating to the child's best interests or the guardian ad litem's recommendation, if any"; the Comment recognizes that, in connection with that testimony, a GAL will be subject to cross-examination.

The Supreme Court's Standards for guardians *ad litem* strongly indicate that a guardian *ad litem* does <u>not</u> function as an attorney for the child, but instead operates in the manner of a court-appointed investigator or expert. A GAL is charged with conducting an independent investigation, and providing the court with an independent recommendation – including through testimony disclosing facts learned by the GAL. While the Standards instruct a GAL to preserve the confidentiality of information generated by third parties which the GAL acquires, nothing in the Standards suggests that the GAL's own communications are confidential or privileged.

Like the Standards, Missouri case law recognizes that a guardian *ad litem* does not function in the traditional role of an attorney for the children, but instead serves largely as an arm of the court. In *State ex rel. Bird v. Weinstock*, 864 S.W.2d 376 (Mo. App. E.D. 1993), a father, acting on his own behalf and on behalf of his children, filed a legal malpractice claim against an attorney who had been appointed as the guardian *ad litem* in an earlier child custody proceeding. Father's petition alleged that the guardian *ad litem* "has been professionally negligent in his representation of the plaintiffs and has failed to exercise the highest degree of care to represent and protect the interests of the plaintiffs." *Id.* at 379. In particular, father alleged that the GAL negligently allowed the children to have visitation with their mother, despite the fact that her husband (the

children's stepfather) had been accused of sexually abusing the children. *Id.* Father also alleged that the GAL had negligently undermined the criminal prosecution of stepfather, and had failed to vigorously advocate for the best interests of the children, instead favoring mother and stepfather's interests. *Id.* at 379-80.

In *Weinstock*, the GAL moved to dismiss the legal malpractice petition, on the grounds that he was entitled to absolute immunity from suit for his actions as a quasi-judicial officer. The circuit court refused to dismiss the action. The Eastern District disagreed, and issued a writ of prohibition ordering that the circuit court dismiss the action. In holding that a guardian *ad litem* was entitled to absolute immunity from tort liability, the Court emphasized that a GAL served a different role than a court-appointed lawyer assigned to represent an indigent criminal defendant. The Court explained:

> Appointed counsel's principal responsibility is to serve the individual interests of his client. In fact, an indispensable element of his performance is the ability to act independently of the state and to oppose it in adversary litigation. . . .
>
> In contrast, at least in custody matters, the guardian ad litem has traditionally been viewed as functioning as an agent or arm of the court, to which it owes its principal duty of allegiance, and not strictly as legal counsel to a child client. In essence, the guardian ad litem role fills a void inherent in the procedures required for the adjudication of custody disputes. Absent the assistance of a guardian ad litem, the trial court, charged with rendering a decision in the "best interests of the child," has no practical or effective means to assure itself that all of the requisite information bearing on the question will be brought before it untainted by the parochial interests of the parents. Unhampered by the *ex parte* and other restrictions that prevent the court from conducting its own investigation of the facts, the guardian ad litem essentially functions as the court's investigative agent, charged with the same ultimate

standard that must ultimately govern the court's decision – *i.e.*, the "best interests of the child." Although the child's preferences may, and often should, be considered by the guardian ad litem in performing this traditional role, such preferences are but one fact to be investigated and are not considered binding on the guardian. Thus, the obligations of a guardian ad litem necessarily impose a higher degree of objectivity on a guardian ad litem than is imposed on an attorney for an adult.

. . . .

. . . Missouri courts have consistently adhered to the traditional view that the guardian's principal allegiance is to the court. Although the best interests of the child are always paramount, the guardian's relationship to the child is not strictly that of attorney and client.

864 S.W.2d at 383-85 (cleaned up). *Weinstock* also noted that § 452.423.3 authorizes the appointing court to monitor a GAL's performance, and to discharge the guardian *ad litem* if their performance is unsatisfactory. This contrasts with "a typical attorney client relationship, [where] the client, not the court, determines whether the attorney's performance is satisfactory and has the absolute right to discharge him for any reason or no reason." *Id*. at 385. For other Missouri cases recognizing that "a guardian *ad litem*'s principal allegiance is to the court," *see*, *e.g.*, *Davis v. Schmidt*, 210 S.W.3d 494, 509 (Mo. App. W.D. 2007); *Guier v. Guier*, 918 S.W.2d 940, 950 (Mo. App. W.D. 1996).

While the domestic relations laws of the various States differ significantly, we note that courts in multiple other jurisdictions have held that a guardian *ad litem* does not operate in the traditional role of an attorney for the child, and that

communications with a GAL are therefore not subject to the attorney-client privilege.[3]  As explained in a recent law review article:

> Generally, in a child custody case, a guardian ad litem acts as an independent advocate for a minor, representing not the child's stated wishes as an attorney would, but rather representing the "best interests of the child." . . .
>
> . . . .
>
> In essence, in its most important role as an advocate for the child's best interests, the guardian ad litem is not an attorney per se, but is an *investigator and reporter*[.]
>
> . . .
>
> This key difference, the guardian ad litem as investigator and not attorney, means that unlike an attorney for a party, a guardian ad litem presents evidence to the court in the form of a report and/or testimony.

---

[3]    *See, e.g., In re Gabriel C.*, 229 A.3d 1073, 1087 (Conn. App. 2020) (in evaluating attorney's potential conflict of interest based on prior service as a GAL, noting that "any information received by an attorney acting as a guardian ad litem for a minor child is not subject to attorney-client confidentiality"); *People v. Gabriesheski*, 262 P.3d 653, 659 (Colo. 2011) (although GALs in Colorado must be licensed attorneys, and must comply with the Rules of Professional Conduct, refusing to apply attorney-client privilege to communications between GAL and child, "[i]n the absence of some clearer expression of legislative intent to do so"); *Culbertson v. Culbertson*, No. 07 CAF 06 0031, 2007 WL 2702450 ¶ 18 (Ohio App. Sept. 17, 2007) ("the requested discovery and the guardian ad litem's Motion for Protective Order do not implicate any privileged matter such as attorney-client privilege or attorney work product.  The Magistrate appointed the guardian ad litem in this case to serve as the guardian ad litem for the parties' daughter, not to serve as the attorney for the daughter."); *Clark v. Alexander*, 953 P.2d 145, 154 (Wyo. 1998) (GAL should explain to child "that the attorney/guardian ad litem is charged with protecting the child's best interest and that information may be provided to the court which would otherwise be protected by the attorney-client relationship" (citation omitted)); *In re Guardianship of Mabry*, 666 N.E.2d 16, 24 (Ill. App. 1996) ("No attorney-client privilege exists between the GAL and ward." (citation omitted)); *Ross v. Gadwah*, 554 A.2d 1284, 1285 (N.H. 1988) ("[T]he attorney-client privilege is incompatible with the guardian's role as a party to and expert witness in custody proceedings.  Communications between a guardian ad litem and a minor child are not privileged.").

. . . .

> Because the guardian ad litem is not the "attorney" per se for the child, attorney-client privilege does not extend to conversations between the guardian ad litem and the child, or indeed between the guardian ad litem and any other person. This makes inherent sense because there can be no reasonable expectation that statements made to a guardian ad litem would be treated as confidential, given the guardian ad litem's role as reporter to the court.

Jacqueline M. Valdespino & Laura W. Morgan, *Guardians ad Litem: Confidentiality and Privilege*, 33 J. AM. ACAD. MATRIM. L. 517, 518-19, 520, 522, 524-25 (2021) (cleaned up); *see also* Gail Chang Bohr, *Ethics and the Standards of Practice for the Representation of Children in Abuse and Neglect Proceedings*, 32 WM. MITCHELL L. REV. 989, 993 (2006) ("in the guardian ad litem role, the court is really the client because the attorney must inform the court about what the attorney thinks is in the best interest of the child regardless of whether the child agrees with the attorney").

Judah cites informal advisory opinions issued by the Missouri Supreme Court's Office of Legal Ethics, which have taken the position that service as a guardian *ad litem* has certain of the attributes of a traditional attorney-client relationship. Thus, informal advisory opinions have found that where a GAL is appointed, a child should be considered as a "represented party" for purposes of contact with lawyers representing others (Informal Op. No. 20030061); that an attorney's former service as a guardian *ad litem* prevents the attorney from later representing others in matters that may be adverse to the child's interests (Informal Op. No. 960102); and that a GAL cannot disclose information learned in that capacity to others, for purposes unrelated to the GAL's service as guardian *ad litem*, but must maintain that information as confidential (Informal Op. No.

950191).  The Supreme Court's own rules provide that such informal advisory opinions "are not binding, but advisory"; summaries of those informal opinions may be published "for informational purposes."  Rule 5.30(c).  In any event, none of the informal advisory opinions cited by Judah involve the privilege issues presented in this appeal; nor should anything in our opinion be read as taking a position on the issues addressed in those informal opinions.

In sum, we conclude that no attorney-client privilege attaches to communications between a guardian *ad litem* and the child whose best interests the GAL is appointed to represent.  A guardian *ad litem* functions as an arm of the Court, and is charged with conducting – and disclosing the results of – an independent investigation of the child's best interests.  The expectation that a guardian *ad litem* will testify to facts that they have learned, without obtaining consent from any other person to such testimony, is inconsistent with the attorney-client privilege.  Moreover, contrary to a typical attorney-client relationship, a GAL is removable by the court (although the parties may peremptorily disqualify a guardian *ad litem* within ten days of their appointment, and additionally seek their disqualification "for good cause shown," § 452.423.1).  The circuit court abused its discretion to the extent that it held that Briscoe was subject to sanctions because she listened to, and exploited, recordings which were subject to the attorney-client privilege.  Point I is granted.

The circuit court's sanctions judgment also concluded, without extended discussion, that "work product protection attached to the GAL's communications with minor child . . . and [Therapist]."  Notably, the court's judgment did not describe the nature of any of the particular communications it considered to fall

17

within the work product protection, even though "[b]lanket assertions of work product are insufficient to invoke protection." *State ex rel. Kilroy Was Here, LLC v. Moriarty*, 633 S.W.3d 406, 414-15 (Mo. App. E.D. 2021) (citation omitted). Because the circuit court did not identify any particular aspect of the recordings which it considered to constitute work product, the judgment did not explain whether the court believed the communications constituted "ordinary work product (sometimes called fact or tangible work product)," or instead "opinion work product (sometimes called core or intangible work product)." *Hill v. Wallach*, 661 S.W.3d 786, 789 (Mo. 2023). The distinction between ordinary and opinion work product is critical, since the two categories are subject to different levels of protection from disclosure. *Id.* at 790.

Given the limited record, the sanctions judgment cannot be sustained on the basis of the work product doctrine. As explained above, the recordings at issue involve conversations between Judah and persons with whom she was not in a traditional attorney-client relationship; moreover, the recordings were lawfully made by another participant in those conversations, and were apparently voluntarily shared with Mother and then with Briscoe. Notably, this case does not involve materials maintained by Judah in her personal files (such as notes or memoranda revealing her mental impressions, evaluations, or strategies). Neither the circuit court's judgment, nor Judah's arguments, point to any particular aspect of the recordings which are particularly revealing or deserving of protection. In these circumstances, the work product doctrine cannot justify the award of sanctions against Briscoe. Point II is granted.

18

We emphasize that this opinion addresses only the rationales offered by the circuit court for its sanctions award. Our opinion should not be read to foreclose the possibility that the communications at issue here may have been protected from disclosure on other legal theories which were not presented to the circuit court, or raised here.

## II.

In her third Point, Briscoe argues that the circuit court erred in granting sanctions based on Briscoe's purported violation of the therapist-patient privilege found in § 337.636. Briscoe argues that Son was not meeting with Therapist in confidence for mental-health treatment, but that Therapist had instead been appointed by the court with the expectation that she would testify at trial.

The therapist-patient privilege is codified in § 337.636, which provides:

> Persons licensed under the provisions of sections 337.600 to 337.689 may not disclose any information acquired from persons consulting them in their professional capacity, or be compelled to disclose such information except:
>
> . . . .
>
> (5)     When the licensee is called upon to testify in any court or administrative hearings concerning matters of adoption, adult abuse, child abuse, child neglect, or other matters pertaining to the welfare of clients of the licensee . . . .

In this case, Therapist was appointed by the circuit court to engage in family therapy with the children and with Father, to evaluate and testify to their interactions and relationship. Consistent with the court's order, Therapist testified in detail at trial concerning the dynamic between Father and the children as revealed during therapy sessions. In the course of her testimony, Therapist related specific statements made by Father and Son during therapy

sessions, the behavior she observed during those sessions, and the conclusions she drew concerning the nature of the children's relationship with their parents. We also note that one of the therapy sessions Son recorded included the guardian *ad litem*, who had her own obligation to report to the Court as discussed above in § I.

Given that Therapist was court-appointed to provide an evaluation for use in resolving child-custody issues, her communications with Son were not subject to the therapist-patient privilege, as contemplated by the exception to the therapist-patient privilege codified in § 337.636(5). In similar circumstances, § 552.020.2 provides that, when the competency of a criminal defendant to stand trial is in issue, the court may appoint a physician or psychologist to examine the defendant; the statute specifies that "[t]he order shall direct that a written report or reports of such examination be filed with the clerk of the court." Missouri courts have held that the requirement that reports of such competency evaluations be filed with the court, and thereby disclosed to the State, does not violate the attorney-client or physician-patient privilege, because the mental-health professional "was appointed by the court to assist the court in determining whether the defendant was fit to stand trial, and by said appointment was an independent expert under the law selected by the judge . . . ." *State v. Brown*, 601 S.W.2d 311, 316 (Mo. App. E.D. 1980) (citation omitted); *see also, e.g., State v. Carter*, 641 S.W.2d 54, 57 (Mo. 1982) (where a criminal defendant pleads not guilty by reason of mental disease or defect, neither the attorney-client privilege, nor physician-patient privilege, applies to an examination of the defendant by a

psychiatrist he had retained, even though the defendant did not intend to call the psychiatrist to testify at trial).

Where Therapist was court-appointed to evaluate and report to the court concerning the relationship between Father and his children, Son was not consulting Therapist for the purpose of therapeutic treatment. The therapist-patient privilege found in § 337.636 did not apply to Therapist's sessions with Son, and the therapist-patient privilege could therefore not serve as a basis for the award of sanctions against Briscoe.

Point III is granted.

## III.

As discussed above, the circuit court's award of sanctions against Briscoe depended on the court's erroneous conclusion that the recordings made by Son involved privileged communications. Even if the recordings were not privileged, however, Briscoe's conduct may warrant the imposition of sanctions in the discretionary exercise of the circuit court's inherent authority.

Guardians *ad litem* fulfill a unique and important role in the litigation of child custody matters. "[T]he guardian ad litem role fills a void inherent in the procedures required for the adjudication of custody disputes," "essentially function[ing] as the court's investigative agent." *State ex rel. Bird v. Weinstock*, 864 S.W.2d 376, 384 (Mo. App. E.D. 1993). As prior cases have stressed, "it is imperative that the guardian ad litem investigate and have input on the perspective of the child's best interest and this be presented to the trial judge." *Interest of J.L.H.*, 647 S.W.2d 852, 861 (Mo. App. W.D. 1983) (cleaned up). A guardian *ad litem* "must be active in determining the best interests of the

children." *Allen v. Allen*, 330 S.W.3d 838, 842 (Mo. App. S.D. 2011) (quoting *Baumgart v. Baumgart*, 944 S.W.2d 572, 579 (Mo. App. W.D. 1997)). "[T]he guardian should use the same if not greater attention and vigil[a]nce in the action as he would have for" an adult client; "if a guardian ad litem is to err it should be on the side of investigating too much rather than too little." *J.L.H.*, 647 S.W.2d at 861 (cleaned up); *see also, e.g.*, *Davis v. Schmidt*, 210 S.W.3d 494, 509 (Mo. App. W.D. 2007); *Portwood-Hurt v. Hurt*, 988 S.W.2d 613, 619 (Mo. App. W.D. 1999).

In cases involving child custody and child support, it is essential that guardians *ad litem* be able to conduct independent investigations, and offer the court their independent recommendations. A critical component of a GAL's independent investigation is the ability to engage in candid conversations and interactions with the children the GAL represents. *See* Standards for Guardians *Ad Litem*, Standard 5.0, comment ("Establishing and maintaining a relationship with the child is the foundation of effective guardian ad litem representation."). A circuit court has the inherent authority to sanction conduct which is intended to, or has the effect of, improperly interfering with a guardian *ad litem*'s independence or with the guardian's relationship with their wards. In this regard, we note that the circuit court's judgment found that Briscoe "used [the] recordings in an attempt to leverage a recommendation from the GAL and/or gain a strategic advantage."

Although we take no position as to whether an award of sanctions is appropriate in this case, we believe a remand to the circuit court is appropriate for it to decide, in the first instance, whether imposition of sanctions on Briscoe is

warranted (independent of any claims of privilege). If the court believes that reimposition of sanctions may be warranted, the court should permit the parties to develop an adequate factual record.

## Conclusion

The rationales on which the circuit court relied to justify the award of sanctions against Briscoe erroneously declared and applied the law, because the family therapy sessions which Son recorded were not covered by the attorney-client or therapist-patient privileges, or by the work product protection. The judgment of the circuit court awarding sanctions against Briscoe is accordingly reversed. Because Briscoe's conduct may warrant the imposition of sanctions even though the recordings were not legally privileged, we remand the case to the circuit court for further proceedings consistent with this opinion.

_____
Alok Ahuja, Judge

All concur.

23